Lee A. PODOLAN, Plaintiff,

v.

AETNA LIFE INSURANCE CO., and Morrison Knudsen Corporation, Long–Term Disability Plan, Defendants.

No. CV94–0311–S–LMB.

United States District Court,
D. Idaho.

Oct. 6, 1995.

F. Michael Burkett, Jr., Boise, ID, for plaintiff.

Stephen R. Thomas and James L. Martin, Boise, ID, for defendants.

## MEMORANDUM DECISION AND ORDER

BOYLE, United States Magistrate Judge.

Currently pending before the Court are Defendant Aetna Life Insurance Co.'s Motion for Summary Judgment (Docket No. 20); Plaintiff's Motion for Summary Judgment (Docket No. 41); Defendant Morrison–Knudsen Corporation Long–Term Disability Plan's Motion for Summary Judgment (Docket No. 57); Defendants' Motion to Strike Affidavit of Thomas P. Goodell, M.D. (Docket No. 64);

Defendants' Motion to Strike all *Post Hoc* Submissions by Plaintiff (Docket No. 66); and Defendants' Oral Motion to Vacate Trial (Docket No. 68).

Having carefully reviewed the record, considered oral arguments and briefs of counsel, and being otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.

## BACKGROUND

Plaintiff in the instant action originally filed her Complaint and Demand for Jury Trial against Aetna Life Insurance Co. ("Aetna") in the Fourth Judicial District for the State of Idaho. Defendant Aetna had the action removed to this Court. *See* Notice of Removal (Docket No. 1). This Court has federal question jurisdiction based upon 28 U.S.C. § 1331 because the subject matter in this dispute involves an ERISA plan under 29 U.S.C. § 1001 *et seq.*

After this action was removed to federal court, Plaintiff's Motion to Amend Complaint was granted by the Court. *See* Order (Docket No. 14). Plaintiff's Second Amended Complaint and Demand for Jury Trial (Docket No. 15) added Morrison Knudsen Corporation, Long–Term Disability Plan as a Defendant.

Plaintiff's Second Amended Complaint alleges that in January 1981, Plaintiff Lee Podolan was employed by Morrison Knudsen Corporation. As an employee, Plaintiff received long-term disability benefits which were provided by Morrison Knudsen through its purchase of long-term disability insurance from Defendant Aetna. Plaintiff became disabled in May 1981, and her application for long-term benefits was approved by Aetna on February 8, 1992. Thereafter, she received long-term disability payments from May 1981 through March 1993.

Plaintiff was notified of Aetna's initial decision to terminate her benefits by letter of March 26, 1993. Plaintiff wrote to Aetna on May 23, 1993, and requested that its initial determination be reviewed and reconsidered. She was subsequently notified by letter dated August 4, 1993 that Aetna's decision to terminate her benefits would be upheld. A second review was requested by Plaintiff and was actually conducted by Aetna. After the review, Aetna again upheld its initial determination to terminate Plaintiff's benefits, giving her final notice of denial of benefits by letter dated March 4, 1994.

Plaintiff alleges in Count I of her Second Amended Complaint that she is entitled to long-term disability benefits under the terms of the Plan on the grounds that she is totally disabled. In this action Plaintiff seeks relief determining that she is permanently disabled, determining that she qualifies for benefits under the Plan, and an order enjoining Defendants from denying her benefits in the future. Second Amended Complaint (Docket No. 15). Plaintiff alleges in Count II of her Second Amended Complaint that the claim denial process employed by Defendant Aetna was defective and asks the Court to conduct a de novo review, find the process defective, and order Aetna to reopen the administrative process. Plaintiff alleges in Count III that because Aetna originally approved her receipt of long-term disability benefits in 1982, and continued to pay such benefits until 1993, that the Court should find Aetna is estopped from denying payment of long-term disability benefits.

The respective motions for summary judgment filed by the parties in this action address many of the same issues. Defendants have both moved for summary judgment on Counts I, II and III of Plaintiff's Second Amended Complaint, and Plaintiff has moved for summary judgment on Counts II and III of her Second Amended Complaint. The Court will first address the standard for summary judgment, and then will discuss Defendants' motions for summary judgment on Count I and the cross-motions for summary judgment on Counts II and III. Because the motions for summary judgment may render the remaining motions moot, the Court will address the motions to strike and to vacate trial after addressing the summary judgment motions if necessary.

## II.

## MOTIONS FOR SUMMARY JUDGMENT

### A. *Summary Judgment Standard*

Motions for summary judgment are governed by Fed.R.Civ.P. 56. Rule 56 provides,

in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The United States Supreme Court has made it clear that under Rule 56, summary judgment is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he/she will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the nonmoving party fails to make such a showing on any essential element of his case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.[1]

Under Rule 56 it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial," *Hahn v. Sargent,* 523 F.2d 461, 463 (1st Cir.1975) (quoting *First Nat'l Bank v. Cities Serv. Co., Inc.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)), *cert. denied* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976) or when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986). The Ninth Circuit cases are in accord. *See British Motor Car Distributors, Ltd. v. San Francisco Automo-*

*tive Industries Welfare Fund,* 882 F.2d 371 (9th Cir.1989).

In ruling on summary judgment motions, the court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626 (9th Cir.1987). Moreover, all inferences must be drawn in the light most favorable to the nonmoving party. *Id.* at 631. As the Ninth Circuit Court of Appeals has stated, "[p]ut another way, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *Id.*

In order to withstand a motion for summary judgment, the Ninth Circuit has held that a nonmoving party:

(1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the nonmoving party's claim implausible.

*British Motor Car Distributors,* 882 F.2d at 374 (citation omitted). Moreover, the Ninth Circuit has held that where the moving party meets its initial burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must "produce 'specific facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir.1983) (citing *Ruffin v. County of Los Angeles,* 607 F.2d 1276, 1280 (9th Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980)).

---

1. *See also* Rule 56(e), which provides in part:
 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
 U.S.S.C. Court Rules, Rules of Civil Procedure, Rule 56(e) (Law. Co-op. 1987 & Supp.1991).

The Ninth Circuit Court of Appeals has acknowledged that in recent years the Supreme Court, "by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). As the Ninth Circuit has expressly stated: "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id.*

In addressing the application of the "Summary Judgment Test," the Ninth Circuit has specifically explained that:

A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the *substantive law* governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

*T.W. Electrical Serv., Inc.,* 809 F.2d at 630 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)) (emphasis added).

## B. Defendants' Motions for Summary Judgment on Count I of Plaintiff's Second Amended Complaint

### 1. The Standard and Scope of Review

In Count I of her Second Amended Complaint, Plaintiff essentially asks the Court to review an administrative decision made by the ERISA Plan administrator, Aetna, and to overturn that decision, essentially substituting the Court's judgment for the determination made by the administrator. While each Defendant has filed separate motions for summary judgment, Defendant Morrison Knudsen Corporation Long–Term Disability Plan's Motion for Summary Judgment (Docket No. 57) is "made and based upon the record before the Court, the accompanying

memorandum, and the papers filed by the Plan's co-Defendant, Aetna. . . ." To the extent that the Defendants' motions are based on the same record and arguments, the Court will address them simultaneously.

### a. Standard of Review

■■■ It is well established that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co., v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989), *quoted in McKenzie v. General Telephone Co. of Cal.,* 41 F.3d 1310, 1314 (9th Cir.1994). *See also Winters v. Costco Wholesale Corp.,* 49 F.3d 550, 552 (9th Cir.1995); *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan,* 46 F.3d 938, 942 (9th Cir.1995). "When a plan fiduciary has discretionary authority, the proper standard of review for ERISA claims brought under § 1132(a)(1)(B) is arbitrary and capricious." *McKenzie,* 41 F.3d at 1314. *See also Madden v. ITT Long Term Disability Plan,* 914 F.2d 1279, 1283–84 (9th Cir.1990), *cert. denied,* 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991). Thus, a threshold issue before the Court in the instant action is whether the Plan gave Aetna discretion to determine eligibility for benefits or construe terms in the Plan. After a careful review of the record, the Court concludes that Aetna was granted such discretion under the terms of the Plan, and that judicial review of Aetna's actions should be made under an arbitrary and capricious/abuse of discretion standard.[2]

■■■ Plaintiff bases her argument that the Plan did not provide for any exercise of discretion on the provisions contained in an Aetna group insurance policy. She asserts "there is no provision in the Aetna policy which would cause it to be construed as anything other than an insurance contract. . . ." Memorandum, p. 4 (Docket No.

---

**2.** The Ninth Circuit has explained in recent decisions that it has used both of the terms "abuse of discretion" and "arbitrary and capricious," but has indicated "that we intended to make no

distinction between the two terms . . . Likewise, in this case, we use the terms interchangeably." *McKenzie,* 41 F.3d at 1314 n. 3.

32). However, Plaintiff does not address the provisions contained in the actual Plan in effect at the time her benefits were terminated in 1993. At the time benefits were terminated, Plaintiff was enrolled in the Morrison Knudsen ("MK") Long–Term Disability Plan,[3] id. at 3, which contained the applicable Plan and trust documents that are at issue here.

■■■ The issue of which particular language is to be considered by the Court in determining whether or not the Plan administrator had discretion has been a source of considerable dispute between the parties. Plaintiff asserts that it is the policy which was in effect at the time her benefits accrued, in 1981, which should be used to determine whether or not the Plan administrator had discretion in interpreting the Plan. Plaintiff directs the Court to the case of Bartlett v. Marietta Operations Support, Life Ins., 38 F.3d 514 (10th Cir.1994), in support of this assertion. In Bartlett, employees were provided with new choices regarding life insurance plans and at that time plan workbooks were given to Bartlett and other employees. No summary plan description was given to plaintiff before he selected a plan, and thus he selected a plan based only on the plan workbook. Bartlett subsequently died and his widow applied for death benefits. The court made a de novo review of the record after concluding that no discretion was given to the plan administrator in the plan workbook. The court concluded that Bartlett could not be bound to the terms of a policy which was not distributed until after his death, and thus disregarded the language in the summary plan description.

The court looked to the time the claim arose in deciding which plan to use in determining whether discretionary language existed.

Defendants rely upon Bolton v. Construction Laborers' Pension Trust, 56 F.3d 1055 (9th Cir.1995), in support of their argument that the 1988 Plan should be used to determine whether the Plan administrator had discretion in interpreting the Plan. The court in Bolton held that "in cases where benefits are denied 'as the result of a significant act of discretion under or interpretation of the plan ...' the date of the 'act or omission' is the date on which the plan provision at issue is applied to the individual." Id. at 1058.

After having carefully read and studied the cases and the post-hearing letter briefs of both parties submitted to the Court on this issue, the Court concludes that the 1988 Plan is the document whose language the Court must interpret in determining whether the Plan administrator had been granted discretion.

■■■ The instant action focuses on whether or not the Plan administrator acted improperly in terminating benefits to Plaintiff in 1993. It was in 1993 that the claim for wrongful termination of benefits arose and it is the Plan administrator's acts in 1993 that are being reviewed by the Court. Therefore, the Court concludes that it is the 1988 Plan governing the administrator's conduct in 1993 that must be considered in determining the scope of review over the administrator's decisions.

The Plan document[4] in the instant action provides:

infra, section C of this decision. Substantial harm cannot be presumed but must be shown by Plaintiff. Plaintiff has made no such showing in this action, and in fact, Plaintiff's full participation in four reviews of Aetna's decision that Plaintiff was not permanently disabled indicate that no harm arose from her alleged lack of knowledge of the Plan.

3. Plaintiff claims that she was not provided with, or has even seen, the Plan or the Summary Plan Description ("SPD"). However, Roger Allen, Vice President of Benefits and Compensation who has been employed by MK since 1976 avers that in 1981 (the year Plaintiff was employed by MK) "it was the business custom and practice of MK to provide to its employees a copy of the MK Employee Handbook." Aff. of Roger Allen, pp. 1–3 (Docket No. 61). The 1980 Handbook contained a section on benefits and stated that it was an ERISA Plan.

Even if Plaintiff did not have personal knowledge of the Plan's contents, she must prove "substantial harm" arose from her lack of familiarity with the plan. For a discussion of this issue see

4. The Plan document referred to is Morrison Knudsen Corp. Long–Term Disability Plan, which became effective January 1, 1988. The Court notes again that while this exact Plan was not in effect when Plaintiff was hired, it was the Plan under which her benefits were terminated. Furthermore, the General Provisions of the 1980

**4.12 Powers of the Claim Administrator**
The *Claim Administrator* shall have such *powers* as are necessary for the proper handling of claims for benefits under the Plan, including but not limited to the following:

. . . . .

(b) To *find facts* and *make determinations* as to the rights of any person applying for or receiving *benefits* under the Plan;

MK Long–Term Disability Plan, p. 17, attached as Ex. A to Allen Aff. (Docket No. 61) (emphasis added). In Section 1.5 of the MK Plan, Aetna is named "Claim Administrator." *Id.* at 2. The language of Section 4.12 quoted above is similar to language in other disability plans which the Ninth Circuit has held provides a grant of discretionary authority, and which requires application of an abuse of discretion standard in reviewing the actions of the administrator. *Patterson v. Hughes Aircraft Co.,* 11 F.3d 948, 949 n. 1 (9th Cir.1993) (plan instructed employees to file a claim and administrator would issue a written decision of approval or denial); *Taft v. Equitable Life Assurance Soc.,* 9 F.3d 1469, 1471 (9th Cir.1993) (plan gave claim administrator power to "construe and interpret the Plan, decide questions of eligibility"). See also *Patterson,* 11 F.3d at 949 n. 2, for a compilation of other Ninth Circuit decisions interpreting similar plans as granting plan administrators with discretionary authority.

Based upon the foregoing, the Court concludes that Aetna was given discretion under the plain language of § 4.12 of the Plan to determine the right of claimants to benefits. Due to the express grant of discretion in the Plan documents, the Court will review Aetna's decision presented here under an abuse of discretion/arbitrary and capricious standard of review.

**b. *Scope of Review***

■ When reviewing a decision made by an ERISA plan administrator under the abuse of discretion standard, the Ninth Cir-

cuit has explained that "the abuse of discretion standard permits the district court to review only the evidence presented to the [plan] trustees." *Taft v. Equitable Life Assurance Soc.,* 9 F.3d 1469, 1471 (9th Cir.1993) (internal quotation marks and citations omitted), *quoted in Winters v. Costco Wholesale Corp.,* 49 F.3d 550, 553 (9th Cir.1995). The Ninth Circuit has recently declined to disturb this rationale for the reasons that "this conclusion is consistent with the nature of abuse of discretion review, furthers the goals of ERISA, and is in line with the decisions of nearly every other circuit to consider the issue...." *Id.* Therefore, in the instant action the Court concludes that under the applicable abuse of discretion standard, evidence not available to the Plan administrator when it made its initial decisions may not be considered by the Court on review.

■ The Court is satisfied, however, that this is the correct conclusion in this action even if a de novo review were the appropriate standard as Plaintiff urges. Plaintiff suggests that a de novo review of the decision to terminate her benefits is appropriate based on *Mongeluzo v. Baxter Long Term Disability Plan,* 46 F.3d 938 (9th Cir.1995), and should be employed by the Court in this action. The *Mongeluzo* standard would allow the Court to hear new evidence at its discretion under certain circumstances:

> We emphasize that a district court should not take additional evidence merely because someone at a later time comes up with new evidence that was not presented to the plan administrator. However, where the original hearing was conducted under a misconception of law; that is, the meaning of "mental illness" or "functional nerve disorder," it is necessary for the case to be reevaluated in light of proper legal definitions.

*Id.* at 940 (emphasis added). *Mongeluzo* involved a denial of continuing benefits based upon a clause in the benefit plan which provided:

> Payment will not be made under this plan for any disability ... for more than 24

---

Employee Handbook, given to all MK Employees, stated "the right of change or discontinuance at any time must be reserved." Employee

Handbook, Major Benefits Section, p. 8. attached as Ex. D to Allen Aff. (Docket No. 61).

months during your lifetime if the disability is caused by mental illness or functional nerve disorder.

*Id.* at 940. Based upon the fact that the terms "mental illness" and "functional nerve disorder" were ambiguous and were not defined, the court held in *Mongeluzo* that it was error for the district court not to have considered new evidence regarding chronic fatigue syndrome and not to have considered whether or not this syndrome was or was not a "mental illness" or a "functional nerve disorder." *Id.* at 943. In order to clear up the misconception of law regarding the definitions of "mental illness" and "functional nerve disorder," and whether those definitions encompassed chronic fatigue syndrome, the district court in *Mongeluzo* was directed to rehear the case and include the chronic fatigue evidence.

There has been no such "misconception of the law" issue asserted in the instant action that would require the Court to exercise its discretion to hear or consider new evidence. In this action Plaintiff is not advancing a new definition of "totally disabled," but rather, she is asking the Court to hear new evidence that she developed at a time subsequent to the administrator's decision. The Ninth Circuit has unequivocally held that the Court is not to "take additional evidence merely because someone at a later time comes up with new evidence that was not presented to the plan administrator." *Id.* Therefore, the Court concludes in this instant action that even if it were to find a de novo standard of review appropriate, it would be inappropriate to consider medical evidence not before the Plan administrator when the initial determinations were made.

### 2. *Analysis*

■ Defendants have moved for summary judgment on Count I of Plaintiff's Second Amended Complaint, alleging that there are no material facts existing regarding the issue of whether Aetna abused its discretion in terminating Plaintiff's benefits under the MK Long–Term Disability Plan. The material facts are not in dispute. The legal controversy arises over whether or not the Plan administrator, Aetna, abused its discretion or

acted arbitrarily and capriciously in terminating Plaintiff's benefits. In resolving this dispute, it must be kept in mind that the decision of the administrator will not be overturned as arbitrary and capricious if it is supported by substantial evidence. *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir.1992).

■ Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988).

■ In the instant action the Court must decide whether there exists substantial evidence to support the administrator's decision that Plaintiff was no longer suffering from a "total disability" and was thus no longer eligible to receive long-term disability benefits. "Total disability" is defined in the Aetna Policy as follows: "that the employee is unable, solely because of disease ... to work at any reasonable occupation." Aetna Record, p. 948. "Reasonable Occupation" is defined as "any gainful activity for which the employee is, or may reasonably become, fitted by education, training or experience...." *Id.*

Leslie J. Hackett was the Senior Disability Analyst who signed the letter dated March 26, 1993, which initially terminated Plaintiff's benefits. Talley Aff., ¶ 3–4 (Docket No. 22). Judy Talley was the Manager of Disability Claims for Aetna Life Insurance Co. at the time Plaintiff's benefits were terminated and was the direct supervisor of Ms. Hackett. *Id.* at ¶ 4. After the March 1993 letter was sent to Plaintiff, Talley personally assumed responsibility for handling the claim and all subsequent reviews of the termination decision. *Id.* Talley conducted the review of the March 1993 termination decision, and in conducting that review relied upon the following:

(1) medical opinions and reports of Dr. Thomas Goodell, Ms. Podolan's main treating physician ... (2) the results of an independent psychiatric evaluation performed by Terry Gipson, (3) a physical capacities evaluation conducted at the Idaho Elks Rehabilitation Hospital; (4) the medical opinion of Aetna's in-house medical consultant; (5) Ms. Podolan's age, education and training; and (6) the medical reports and records contained within the Podolan claim file, including additional records which Ms. Podolan submitted for review.

*Id.* at ¶ 7. After reviewing the above information, Talley determined that the initial decision that Plaintiff was not totally disabled should be upheld. Plaintiff was notified by letter of August 4, 1993. Another review was requested and granted. Again Talley relied on the above documents as well as the following new information in conducting a review: "another IME which was performed by Dr. Michael Weiss in January of 1994. Dr. Weiss opined in his IME report that Mr. Podolan was capable of performing sedentary work with some limitations." *Id.* ¶ 9. Again Talley determined that the March 1993 termination should be upheld because she determined that Plaintiff no longer met the requirements of totally disabled. *Id.* at ¶ 10.

In reviewing the Plan administrators's decision for abuse of discretion, the Court will review the evidence which Talley relied upon in each of the determinations she made to uphold the March 1993 termination of benefits.

Dr. Goodell, Plaintiff's treating physician, responded to Aetna's inquiry as to her condition by his letter of July 16, 1992, to Ms. Hackett as follows:

In answer to your question, Ms. Podolan faces a physical limitation of easy fatigability. She will be limited to sedentary work with no vigorous physical activity involved. Examples of such work would be desk work or computer type positions. However, she probably would not be able to work successfully at a position that required repetitive, continuous activities, such as data entry into a computer.

Aetna Record at 1039. Goodell sent a letter to Plaintiff's counsel on August 31, 1993, which again addressed her work related capabilities:

Ms. Podolan suffers from severe fatigue which limits her functional abilities.... Ms. Podolan will be very limited in possible work assignments as she is physically capable only of sedentary work which could be performed at her own pace and which would need to have adequate rest-periods as part of the position. She is not capable of performing repetitive or continuous activities because of her severe fatigue. As we discussed in our telephone conversation, such activity restrictions would make it extremely difficult for her to find suitable employment.

Aetna Record, at 892.

At no time, even in this letter to Plaintiff's counsel, does Dr. Goodell say that Ms. Podolan is incapable of employment or that she is totally disabled. It is also important to note at this point that the definition of totally disabled in Aetna's policy is "that the employee is unable, solely because of disease ... to work at any reasonable occupation." Aetna Record, p. 948. "Reasonable Occupation" is defined as "any gainful activity for which the employee is, or may reasonably become, fitted by education, training or experience...." *Id.* Based upon Dr. Goodell's letters, the Court finds some evidence, even from Plaintiff's own treating physician, that she does not fit the Plan definition of totally disabled.

Dr. Terry Gipson performed a psychiatric assessment of Plaintiff on January 22, 1995, and explained that he purposely interviewed Plaintiff before reviewing the Aetna records so that he "could form [his] own opinion regarding the questions being asked by Ms. Hackett." Aetna Record, at 908. Dr. Gipson's impression from the interview and his discussion following the interview indicate as follows:

Impression: I do not believe that this patient presents data during the two hours of the interview to support having a psychiatric diagnosis.

Discussion: It is obvious that the patient has an extreme preoccupation with illness

and has a lot of illness behavior. To the degree that she has documented medical problems, her preoccupation with them and the degree of disability seems somewhat excessive.

Aetna Record, at 910. In response to the specific questions posed by Aetna regarding Plaintiff's condition, after his interview with Plaintiff Dr. Gipson responded: "I don't believe that this patient is disabled on the basis of a psychiatric condition." February, 12, 1993 Letter, Aetna Record, at 906.

In making and confirming the decision that Plaintiff was not totally disabled, the Plan administrator also reviewed a physical capacities evaluation conducted at the Idaho Elks Rehabilitation Hospital on October 10, 1992. In a letter to Plaintiff's counsel from Vanessa Reed, PT Assessment Specialist and Michael Weiss, M.D., P.P.H. Medical Director, Workfit Program, the following conclusion was expressed:

> This is identified to be a Valid representation of LEE PODOLAN's present physical capabilities based upon.... The numbers as indicated on the Functional Assessment Overview reflect present safe capabilities for a return to work status.

Aetna Record, at 987. Plaintiff's Request for Review of May 25, 1993, found it significant that the physical capabilities report "indicated that most of the tests were terminated because she became quickly fatigued and her heart rate rose too high too quickly." Aetna Record, at 919. However, when read in the context of the letter, this statement is more clear:

> Most activities were terminated due to complaints of fatigue by client.... Resting heart rate of 120 bpm significantly limited client's capacity for additional activity.... Due to the high resting heart rate and 20–40 bpm increase with light activity, I feel careful consideration should be given to increasing Lee's activity level. With physician approval, Lee may benefit from a low level endurance and strengthening program before considering employment possibilities.

Aetna Record, at 987. Dr. Goodell also received a letter which conveyed substantially the same information and conclusions. Aetna Record, at 986.

Because "Reasonable Occupation" in Aetna's Plan is defined as "any gainful activity for which the employee is, or may reasonably become, fitted by education, training or experience" *id.*, and because after the Elks' physical capabilities exam Plaintiff was found capable of a return to work status with a recommendation that she undergo a strength and endurance program, a reasonable person could conclude that Plaintiff was capable of engaging in a reasonable occupation under the Aetna Plan's definition. This conclusion would render her not totally disabled as defined in the Aetna policy.

Additionally, an independent medical examination was performed by Dr. Michael Weiss on January 24, 1994, and was considered. Dr. Weiss' conclusions after his examination of Plaintiff were as follows:

> DISCUSSION: Lee Podolan's limitations related to her diagnosis would be for sedentary work with avoidance of above shoulder.... She also reported being frequently bedridden with flu-like symptoms approximately one-third of each month, both of which subjective complaints would limit her ability to perform work at the sedentary level.

Aetna Record, at 820. Dr. Weiss also completed a Disability Determination Summary form after his examination of Plaintiff, in which he concluded that Plaintiff was able to return to a different type of job than she held before, with the following modifications:

> Sedentary work, as lib position change. May need vision adaptation for computer terminal display. Frequency of reported "flu-like" complaints limiting to bed ⅓ of each month may render her totally disabled from gainful work.

Aetna Record, at 821. The fact that Dr. Weiss concluded that Plaintiff *may* be totally disabled does not change the state of the record that substantial evidence, albeit conflicting, exists in the record, and even his conclusions support the administrator's conclusions.

As set forth above, the legal standard defining "substantial evidence," is relevant evi-

dence as a reasonable mind might accept as adequate to support a conclusion, *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The definition of "Total disability" is "that the employee is unable, solely because of disease . . . to work at any reasonable occupation," record, p. 948, and the definition of "Reasonable Occupation" is "any gainful activity for which the employee is, or may reasonably become, fitted by education, training or experience. . . ." *Id.*

Based on application of the above legal standards, definitions and factual record, the Court finds and concludes that there is indeed "substantial evidence" in the record which was before the Plan administrator when the decision to terminate Plaintiff's benefits and the decisions to uphold the termination were made.

Therefore, Defendants' motions for summary judgment on Count I are granted.

## C. *Motion for Summary Judgment on Count II*

Defendants and Plaintiff have filed cross-motions for summary judgment on Count II of Plaintiff's Second Amended Complaint (Docket No. 17), which alleges that the claim denial process employed by Aetna in terminating Plaintiff's benefits was defective. All parties acknowledge that with respect to this claim "the facts are not disputed and summary judgment is appropriate." Plaintiff's Memorandum, p. 1 (Docket No. 42); Defendants' Joint Memorandum, p. 1 (Docket No. 62).

In its motion for summary judgment filed on June 23, 1995, Defendant Aetna contends that its claims process was not defective because the termination of benefits notices sent to Plaintiff and her counsel complied with the ERISA statutory and regulatory procedures. Memorandum, p. 2 (Docket No. 20). However, Plaintiff argues in her motion for summary judgment that Aetna's claims process was defective insofar as 1) Aetna's notice of termination did not contain the required description of additional material or information necessary for Plaintiff to perfect her claim; 2) Plaintiff did not receive appropriate ERISA notices as an employee and claimant

under the ERISA plan and therefore proceeded with the administrative review without notice that Aetna was accomplishing and ERISA review; and 3) direction provided by MK to Aetna during the claims process tainted the review process and denied Plaintiff her right to an impartial and independent review by Aetna. Memorandum, p. 1–2 (Docket No. 42).

The ERISA requirements for termination of benefits are found in 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503–1(f). The notice sent upon termination of benefits must contain the following:

> (f) Content of Notice. A plan administrator . . . shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:
>
> (1) The specific reasons for the denial;
>
> (2) Specific reference to pertinent plan provisions on which the denial is based;
>
> (3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such information and material or information are necessary; and
>
> (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503–1(f). Three notices were sent to Plaintiff regarding the termination of her benefits. The first notice was sent on March 26, 1993, Aetna Record, p. 894, the second was sent August 4, 1993, *id.* at 915–16, and the final notice was sent March 4, 1994, *id.* at 822.

The three notices sent to Plaintiff contained the following:

> (1) Specific reasons for denial: "Our evaluation . . . indicates Ms. Podolan is in fact capable of performing reasonable work." March 1993 letter (Record p. 894); "In making our original determination that Ms. Podolan is now capable of reasonable work, we considered the information provided to us by her attending physician . . ." August 4, 1993 letter (Record, p. 915); "we do not believe the objective medical evidence doc-

uments limitation sufficient to prevent regular remunerative work by the claimant." March 4, 1994 letter (Record, p. 822).

(2) Specific reference to pertinent plan provisions on which the denial is based: "in order to be eligible for LTD benefits Ms. Podolan must be prevented from performing any reasonable occupation due to disability. Reasonable work takes into account age, education, training, and prior work experience." March 26, 1993 letter (Record, p. 894). *See also* August 4, 1993 letter (Record, p. 915)

(3) A description of additional material necessary to perfect the claim: "we are willing to review any additional information you care to submit ... Please have Ms. Podolan's attending physician provide a detailed narrative report which outlines, in objective terms, the limitations and restrictions inherent to her current condition." March 26, 1993 letter (Record p. 894).

(4) Appropriate information as to the steps to be taken for review: "You are entitled to review of this determination ... To obtain a review, you or your representative should submit a request in writing to this office. Your request should include ..." March 26, 1993 letter (Record, p. 895);

■■■ Plaintiff contends that the above notices are deficient because they do not provide a description of additional material and information necessary for Plaintiff to perfect her claim. The Court finds this argument to be unpersuasive and without merit. Initially, the Court notes that Plaintiff provides no case law to support her assertion that Defendant was required to give her a detailed list of what was needed to make her claim *succeed*. Plaintiff in a sense has argued that Aetna had a duty to tell her which statements of which doctors it relied upon so that she could go out and find a doctor to provide the opposite opinion. This is not what the Court interprets 29 C.F.R. § 2560.503–1(f) to intend or require when it says the plan administrator must provide all information necessary for the claimant to *perfect* her claim. In the Court's view, a claim is perfected when a plan administrator

has all materials and information necessary to make its decision.

■■■ Furthermore, Plaintiff was given notice that Aetna was "willing to review any additional information you care to submit ... Please have Ms. Podolan's attending physician provide a detailed narrative report which outlines, in objective terms, the limitations and restrictions inherent to her current condition." Aetna Record, p. 894. This notice given to Plaintiff is similar to notices sent to claimants in other cases which has been deemed appropriate and sufficient by the Ninth Circuit. In *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279 (9th Cir.1990), for example, the Ninth Circuit had an opportunity to review the ERISA notice requirements. The court explained:

> Under ERISA, adequate notice in writing must be provided to any participant whose benefit claim has been denied, which must set forth the specific reasons for the denial. ERISA, 29 U.S.C. § 1133(1) (1988). The record shows that Metropolitan promptly notified Madden of its decision to terminate his Plan benefits, indicating that his benefit claim was denied because he was no longer "totally disabled" under the Plan. The record also shows that in this notice Metropolitan instructed Madden as to the proper method of appeal, *specifically requesting the submission of any additional medical reports that would support his claim*.

*Id.* at 1285–86 (emphasis added). The actual language in the letter giving notice that Madden's benefits were terminated was "[w]hen requesting a review, please state the reason you believe that claim was improperly denied, and submit any data, questions or comments you deem appropriate." *Id.* at 1282. The Ninth Circuit affirmed the trial court's decision that the notice provided to Madden met ERISA requirements, rejecting Madden's arguments that he had not been properly notified of what additional information would perfect his claim. *Id.* at 1286.

Based upon the foregoing, the Court concludes in the instant action that the notices sent to Plaintiff met the ERISA requirements for notice of termination of benefits. For these reasons, the Court finds the no-

tices sent to Plaintiff by Defendant Aetna were legally sufficient as required by controlling law.

Plaintiff further asserts that the claims process employed by Defendant was defective in that she was not provided with proper Plan documents and was thus unaware that the Aetna review was an ERISA action. The Court also finds this argument to be without merit. While Plaintiff claims not to have been provided with, or to have seen, the Plan or the Summary Plan Description ("SPD"), Roger Allen, Vice President of Benefits and Compensation who has been employed by MK since 1976 avers that in 1981 (the year Plaintiff was employed by MK) "it was the business custom and practice of MK to provide to its employees a copy of the MK Employee Handbook." Allen Aff., p. 1–3 (Docket No. 61). The 1980 Handbook contained a section on benefits and expressly stated that it was an ERISA Plan.

However, even assuming for purposes of argument, if Plaintiff did not have actual knowledge of the Plan's contents because she did not receive a copy of the SPD, she still must prove and establish that "substantial harm" arose from her lack of familiarity with the plan. The Ninth Circuit Court of Appeals has explained:

> "[o]rdinarily, a claimant who suffers because of a fiduciary's failure to comply with ERISA's procedural requirements is 'entitled to no substantive remedy' ... However, we created an exception to the general rule, holding that if continuing procedural violations result in 'substantive harm,' then a court must consider [such violations] in determining whether a decision to deny benefits in a particular case was arbitrary and capricious."

*McKenzie v. General Telephone Co.*, 41 F.3d 1310, 1315 (9th Cir.1994) (quoting *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir. 1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985)) (internal citation omitted). It is well established that "substantial harm" cannot be presumed but must be shown by Plaintiff. *Id.* at 1315. Plaintiff

has made no such showing in this action, and in fact, her full participation in several reviews of Aetna's decision that she was not permanently disabled indicate that no harm arose from her alleged lack of knowledge that the Plan was an ERISA review. Therefore, the Court finds and thus concludes that Defendant's claims process was not defective in that Plaintiff's alleged failure to have knowledge that the Aetna determination was an ERISA proceeding, even if true, did not result in or cause her substantial harm.

Plaintiff's final argument in support of her contention that Defendant's claims process was defective was that MK was a participant in the process. Plaintiff cites no authority, either in ERISA or in case law interpreting ERISA that gives rise to a claim or cause of action for an employer's knowledge of or participation in the claims process. Therefore, the Court declines to find or conclude as a matter of law that MK's alleged participation prejudiced her rights. In this regard, the Ninth Circuit has held that a plan administrator can be an employer. *Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 552 (9th Cir.1995). If the employer is the plan administrator, the Court is required to apply a more "stringent version of the abuse of discretion standard" *id.*, but is not required to remand the action to the administrator of another review as the Plaintiff contends in this action. If indeed MK was involved in the decision to terminate Plaintiff's benefits, the remedy is to apply a stronger abuse of discretion standard,[5] not to find the claims process to be defective.

A careful review of the record fails to disclose any meaningful evidence that MK was consulted regarding Plaintiff's claim until the third review. Judy Talley has averred that an initial review was made which led to the March 1993, termination decision, a second review led to the August 4, 1993 affirmation of the termination, and it was not until the review process that led to the March 4, 1994 termination affirmation that Talley "[a]fter reading the entire Podolan file ... consulted with Aetna's in house medical con-

---

5. The court in *Winters* did not explain what it meant by a more stringent version of the abuse of discretion standard.

sultant, Dr. Robert Gavin, [her] supervisor, John Owens, and various MK personnel." Talley Aff., ¶ 8–10 (Docket No. 22). There is simply no evidence in the record that MK personnel in any way affected the review process. Moreover, the Court has already concluded that there is more than sufficient, substantial evidence to support the administrator's decision absent any consultations or opinions from MK personnel.

For the above reasons, Defendant's motion for summary judgement on Count II is granted, and Plaintiff' motion for summary judgment on Count II is denied.

### D. *Motion for Summary Judgment on Count III*

Defendant Aetna and Plaintiff have filed cross-motions for summary judgment on Count III of Plaintiff's Second Amended Complaint (Docket No. 17), which alleges that because Defendant paid disability benefits to her from 1982 to 1993, it should be estopped, both legally and equitably, from denying her disability benefits in the future. Both parties acknowledge that with respect to this claim the facts are not disputed and summary judgment is appropriate. *See* Plaintiff's Memorandum, p. 1 (Docket No. 42); Defendant's Memorandum, p. 1 (Docket No. 62).

 Plaintiff is correct in her assertion that the federal common law of equitable estoppel can be applicable in ERISA actions. However, Plaintiff fails to acknowledge that additional limitations are placed upon the doctrine of equitable estoppel by the Ninth Circuit in ERISA actions. In such cases a plaintiff prove the following elements:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; (4) he must rely on the former's conduct to his injury.

*Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1096 (9th Cir.1985). In addition, a plaintiff must also prove:

> (a) the provisions of the plan at issue are ambiguous such that reasonable persons could disagree as to their meaning or effect; and (b) representations are made to the employee involving an oral interpretation of the plan.

*Greany v. Western Farm Bureau Life Ins. Co.,* 973 F.2d 812, 821 (9th Cir.1992). In the instant action, even if Plaintiff could establish that the first four elements are met, a careful review of the record makes it clear that she has not proven the last two elements have been met.

Plaintiff asserts that Aetna should be estopped from denying Plaintiff benefits because Aetna paid Plaintiff disability benefits for more than ten years. However, the clear language of the Policy states "the period of total disability shall be deemed to terminate, unless otherwise specifically provided for in this Article II, on the earliest to occur of (a) *the date the employee is no longer "totally disabled"* as defined in section 1 of this Article II ..." Aetna Policy, Article II.B., Record, p. 949 (emphasis added). This language clearly provides that a beneficiary's long-term disability payments may be terminated upon certain events occurring. This section indicates that just because an employee is deemed to have been totally disabled at one point in time, she is not automatically or absolutely deemed totally disabled for the rest of her life. Rather, she may be subject to a termination of benefits if she meets any one of the conditions specified in the Plan. Plaintiff does not allege that Defendant Aetna made representations in its Plan, employee handbook or orally to her that once found to be totally disabled that she would receive disability benefits for the rest of her life.

In summary, the Court finds and thus concludes that Aetna acted within the written terms of the Policy in making a determination that Plaintiff was no longer totally disabled and in terminating her benefits and that Defendant is not now estopped from denying Plaintiff benefits. Although there is evidence which could be interpreted as supporting Plaintiff's claim of total disability, there is substantial evidence in the record upon which the administrator could reason-

ably base its decision. As such, the administrator did not abuse its discretion.

Consequently, Plaintiff's motion for summary judgment on Count III is denied, and Defendant Aetna's motion for summary judgment on Count III is granted.

## III.

## REMAINING MOTIONS

Because the Court has granted Defendants' motions for summary judgment, it is not necessary to consider Defendants' Motion to Strike Affidavit of Thomas P. Goodell, M.D. (Docket No. 64); Defendants' Motion to Strike all *Post Hoc* Submissions by Plaintiff (Docket No. 66); and Defendants' Oral Motion to Vacate Trial (Docket No. 68).

## IV.

## ORDER

IT IS HEREBY ORDERED:

1. Defendant's Motion for Summary Judgment (Docket No. 20) is GRANTED.

2. Plaintiff's Motion for Summary Judgment (Docket No. 41) is DENIED.

3. Defendant Morrison–Knudsen Corporation Long–Term Disability Plan's Motion for Summary Judgment (Docket No. 57) is GRANTED.

4. Defendants' Motion to Strike Affidavit of Thomas P. Goodell, M.D. (Docket No. 64) is MOOT.

5. Defendants' Motion to Strike all *Post Hoc* Submissions by Plaintiff (Docket No. 66) is MOOT.

6. Defendants' Oral Motion to Vacate Trial (Docket No. 68) is GRANTED.

7. This action is dismissed in its entirety and the trial date is hereby VACATED.

SO ORDERED.