107 F.3d 17
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Lee A. PODOLAN, Plaintiff-Appellant,
v.
AETNA LIFE INSURANCE COMPANY; Morrison Knudsen Corporation,
Long-Term Disability Plan, Defendants-Appellees.
 No. 95-36145.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 8, 1997.
Decided Feb. 04, 1997.
 
 Before: WRIGHT, CANBY and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Lee Podolan appeals from the district court's grant of summary judgment in favor of defendants. Podolan v. Aetna Life Ins. Co., 909 F.Supp. 1378 (D.Ida.1995). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 Podolan challenges the decision of Aetna Life Insurance Company ("Aetna"), as the plan administrator, to terminate her long-term disability ("LTD") benefits.[1] Podolan claims that she was entitled to de novo review of Aetna's decision because the plan at the time she became disabled did not provide for the discretionary language that entitles the fiduciary to the more deferential abuse-of-discretion standard. Podolan claims that Aetna's decision to terminate her benefits was arbitrary and that the procedure it used to notify her of the termination of its benefits was defective. Specifically, Podolan claims that she was entitled to have Aetna consider additional "documentation and information" relating to her claim. Accordingly, Podolan sought judgment declaring her entitled to LTD payments, or, alternatively, a remand to the administrative process for Aetna to consider new evidence.
 
 I. Standard of Review
 
 4
 A district court's grant of summary judgment is reviewed de novo. McKenzie v. General Tel. Co., 41 F.3d 1310, 1314 (9th Cir.1994), cert. denied, 115 S.Ct. 1697 (1995). The standard of review that the district court should have used to review Aetna's decision to terminate Podolan's LTD benefits is in dispute. Podolan contends that Aetna's decision should have been reviewed under the de novo standard. Aetna argues that the abuse of discretion standard is applicable.
 
 
 5
 A decision to deny or terminate benefits under a plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), when challenged (as here) under 29 U.S.C. § 1132(a)(1)(B), is reviewed "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). When the plan vests the administrator or a fiduciary with discretionary authority to determine eligibility for benefits, that determination will be reviewed for an abuse of discretion. Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1471 (9th Cir.1993). This standard requires the reviewing court to determine whether the denial of benefits was arbitrary and capricious. McKenzie, 41 F.3d at 1314 & n. 3 (no distinction between "arbitrary and capricious" and "abuse of discretion").
 
 
 6
 Podolan concedes that the plan in effect at the time the decision to terminate her benefits was made granted the requisite discretionary authority to Aetna to determine benefit eligibility. However, she argues that because her disability occurred prior to the plan being amended clearly to confer such discretionary authority, she is entitled to de novo review of Aetna's decision to terminate her benefits.
 
 
 7
 Podolan incorrectly assumes that the plan in effect at the time she became disabled did not provide Aetna with the requisite discretionary authority. In fact, at the time Podolan became disabled in 1981, Aetna was entrusted under the plan then in force with making determinations of eligibility for disability benefits. The policy in effect at that time required a claimant initially to submit to Aetna "written proof of total disability," and further allowed Aetna to demand "subsequent written proof of the continuance of such disability ... at such intervals as [Aetna] may reasonably require." Under Snow v. Standard Ins. Co., 87 F.3d 327 (9th Cir.1996), we conclude that these plan provisions gave Aetna discretionary authority to determine eligibility for benefits; therefore, Aetna's decision must be reviewed under the abuse of discretion standard.
 
 
 8
 In Snow, we used the abuse of discretion standard in connection with a plan containing a provision substantially identical to the one at issue here. The plan in Snow required the administrator to be "presented with what it considers to be satisfactory written proof of the claimed loss." Id. at 330. Similarly, under the 1981 plan under consideration here, no benefit payment could have been made unless Aetna was presented with satisfactory written proof of the claimed loss. This fact meant Aetna had authority to determine eligibility for benefits under the old plan, which "inherently confer[red] discretion" upon it. Id. Therefore, even under the 1981 plan, review of Aetna's decision must be for abuse of discretion. This conclusion is consistent with our observation in Snow that it was "sensible" not to be "stingy in our determinations that discretion is conferred upon plan administrators" because "a proper and efficient functioning of an ERISA plan does often depend upon the use of discretion by the plan fiduciaries." Id.
 
 
 9
 Finally, Podolan contends that a less deferential abuse of discretion standard should be applied because of the conflict of interest resulting from Aetna being both the insurer and the fiduciary making the decision to terminate benefits. We reject this claim because Podolan has not pointed to any "specific facts" indicating that the conflict of interest caused a serious breach of Aetna's fiduciary duty to Podolan. Atwood v. Newmont Gold Co., 45 F.3d 1317, 1322-23 (9th Cir.1995) (standard of review does not vary in absence of "material, probative evidence, beyond the mere fact of the apparent conflict").
 
 II. Aetna's Decision
 
 10
 A plan administrator or fiduciary abuses its discretion "if it relies on clearly erroneous findings of fact in making benefit determinations." Taft, 9 F.3d at 1473. The fiduciary's decision will not be overturned where "there is substantial evidence to support the decision, that is, where there is 'relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence.' " Snow, 87 F.3d at 331-332 (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir.1994)).
 
 
 11
 Podolan argues that Aetna's decision was arbitrary because Aetna "closed her claim out" without allowing her time to present more evidence. This argument goes to the procedure used by Aetna in reviewing her claim. As discussed below, Aetna conducted a "full and fair" review of Podolan's claim. Therefore, Aetna's procedural handling of that claim cannot be relied on to argue that Aetna's termination decision constituted an abuse of discretion.
 
 
 12
 Podolan also contends the district court should have considered certain evidence that was not presented to Aetna during the administrative review process. The district court correctly refused to consider such evidence. In abuse of discretion cases, the court may not consider any evidence which was not before the plan administrator at the time the administrator's decision became final. Taft, 9 F.3d at 1471-72.
 
 III. Aetna's Review Process
 
 13
 Podolan argues that Aetna did not comply with its statutory obligation to afford her a "reasonable opportunity" for a "full and fair review" of the decision denying her claim. 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503-1. Accordingly, Podolan asks that the case be remanded so the administrative process can be re-opened and new evidence can be considered by Aetna.
 
 A. The timing of Aetna's actions
 
 14
 Podolan contends that Aetna acted unfairly in ending its review process approximately a month after receiving the medical report from Dr. Weiss which contained, for the first time, a diagnosis of Chronic Fatigue Syndrome ("CFS"). Podolan asserts she was entitled to more time in which to explore the impact and ramifications of this "new and critical information."
 
 
 15
 We conclude that Podolan was not deprived of a full and fair review as a result of Aetna's actions subsequent to Dr. Weiss' report. Podolan had almost a year, from the time she learned that Aetna would re-evaluate her disability status to the time benefits were terminated, to present medical evidence of her condition for consideration by Aetna. Following the termination of benefits, Podolan had another year during which Aetna conducted a review of its termination decision. During that two-year period, Podolan had every opportunity to obtain and present to Aetna a diagnosis of CFS, but failed to do so.
 
 
 16
 The CFS diagnosis in Dr. Weiss' report was the result of an independent medical examination conducted at the request of Aetna. Podolan does not provide any valid reason why she could not have, during the two-year period, developed the medical information necessary to establish that CFS rendered her totally disabled.
 
 
 17
 Furthermore, besides adding the word "syndrome" to the term "chronic fatigue," Dr. Weiss' "diagnosis," and its context, did not offer any information which was not available previously to Aetna or which would cause a reasonable person to investigate further. In fact, Podolan's counsel seemed to agree that Dr. Weiss' report did not contain any new information. Shortly after receiving Dr. Weiss' report, Podolan's counsel sent a letter to Aetna extensively commenting on the report. In that letter, Podolan's counsel did not note the existence of any new information concerning Podolan's fatigue, nor did she request additional time to evaluate and consider further the status of her case in light of the "new information" which the CFS diagnosis purportedly represented. In fact, the opposite is true: the letter complained that Dr. Weiss' report did not "adequately address the extreme fatigue Ms. Podolan battles each day." Instead of requesting time to develop new medical evidence, Podolan's counsel attacked the general validity of the report's findings and asserted that if the LTD benefits were not reinstated within 14 days, litigation would be initiated.
 
 
 18
 In these circumstances, it is clear that Aetna acted reasonably and therefore complied with its statutory obligation to provide Podolan with a "full and fair" opportunity to contest the termination of her disability benefits. Aetna provided Podolan with a period of almost two years to provide additional medical evidence; different persons within Aetna were involved at each stage of the review process; and independent medical examinations were performed. We have held substantially identical steps by a fiduciary to be sufficient to ensure a "full and fair review" under § 1133(2). Madden v. ITT Long Term Disability Plan, 914 F.2d 1279, 1286 (9th Cir.1990).
 
 B. Podolan's ignorance of ERISA
 
 19
 Podolan also claims that she was not afforded a reasonable opportunity for a full and fair review of Aetna's decision because her failure to introduce evidence regarding CFS during the two-year review process is attributable to Aetna. Specifically, she asserts that such evidence was not introduced during that period because Aetna did not inform her that her LTD insurance was governed by ERISA and that, accordingly, she would be prevented from judicially challenging Aetna's decision on the basis of new evidence.
 
 
 20
 Podolan presented the district court with evidence, sufficient at the summary judgment stage, to show that she was unaware, during the administrative review process, that ERISA governed her claim. However, for Podolan to prevail on this theory, she would need to demonstrate that (i) her ignorance can legally be attributed to Aetna, and (ii) she was harmed by it.
 
 
 21
 We need not resolve whether, on the record before us, Aetna was legally responsible for Podolan's ignorance because we conclude that, even if it were, Podolan has not demonstrated that she was harmed by that ignorance.
 
 
 22
 Ordinarily, a fiduciary's failure to comply with ERISA's procedural requirements does not entitle a participant to a substantive remedy. McKenzie, 41 F.3d at 1315. However, when continuing procedural violations result in substantive harm, such violations must be considered in determining whether the denial of benefits is arbitrary and capricious. Id. Therefore, for Podolan to prevail, she must demonstrate that she suffered substantive harm, even if only in the form of prejudice to her opportunity to obtain a full and fair review of the decision to terminate her benefits.
 
 
 23
 To demonstrate harm as a result of her ignorance of ERISA, Podolan must show that, after discovering that ERISA governed her claim (i) she developed additional evidence which she submitted to Aetna, (ii) Aetna refused to consider it, and (iii) the evidence consists of new information which, in light of the existing administrative record, would be expected to have some impact on the evaluation of the entire evidence by a reasonable administrator. See Atwood, 45 F.3d at 1324-25.
 
 
 24
 Podolan claims that she provided Aetna with the following "new information:" (1) a statement from Dr. Moore; (2) a statement from Dr. Goodell; (3) a statement from Podolan herself; (4) a statement from Podolan's mother-in-law; and (5) a report by a "vocational rehabilitation specialist." Podolan does not support her assertion that she provided Aetna with these materials with any reference or citations to the record. However, Aetna conceded, in its "Statement of Undisputed Facts in Support of its Motion for Summary Judgment," that, in April 1995, approximately a year after both the filing of this lawsuit and the initial CFS diagnosis, Podolan requested Aetna to conduct another review of her claim. According to Aetna, Podolan accompanied this request with the statements from Podolan and her mother-in-law and with the vocational report. There is no evidence that the statements from Dr. Moore and Dr. Goodell, to which Podolan refers, were provided to Aetna. In fact, those statements were prepared in July and August 1995, months after Podolan made her April request.
 
 
 25
 On the basis of the timing and substance of Podolan's request, Aetna refused to initiate another review of her claim and therefore did not consider the documents submitted by Podolan in April 1995. After reviewing the evidence Podolan provided to Aetna at that time,[2] we conclude that, in light of the extensive medical evidence that Aetna had considered previously, the non-medical information Podolan provided Aetna in April could not conceivably have been expected to have any impact on the evaluation of Podolan's claim by any reasonable administrator.
 
 
 26
 First, Podolan does not explain what new information is contained in the statements from Podolan and her mother-in-law or in the vocational report, nor have we found any new information in those documents. Second, although Podolan claims the evidence she would like Aetna to consider is related to Dr. Weiss' CFS diagnosis, none of this evidence flows from that diagnosis; it consists of information which could have been submitted to Aetna during the two-year review process.
 
 
 27
 Finally, the documents provided to Aetna did not contain any facts tending to question the validity of the overwhelming medical evidence Aetna considered. The Podolan affidavit consists of a detailed description of Podolan's symptoms, and the activities Podolan conducts, during an average day, emphasizing the extreme fatigue Podolan feels and her constant need for rest. The affidavit of Podolan's mother-in-law describes, with specific examples, that she has observed, during extended visits to the Podolan household, that Podolan is constantly fatigued by the slightest exertion and cannot engage in almost any physical activity without then requiring immediate bed rest. The vocational expert explains why he thinks Podolan "currently does not have access to any reasonable employment." In short, Podolan has not shown that she attempted to submit to Aetna new evidence of any significance; therefore, no harm resulted from her ignorance that ERISA governed her claim.
 
 
 28
 We conclude that Podolan obtained a full and fair review of her claim and did not suffer any harm from the various asserted procedural violations. She had adequate notice of the applicable disability standard and a two-year period in which to submit relevant evidence to Aetna. Her ignorance of the fact that ERISA governed her disability claim was not prejudicial. Atwood, 45 F.3d at 1324-25; McKenzie, 41 F.3d at 1315-16.[3]
 
 
 29
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit, except as provided by 9th Cir.R. 36-3
 
 
 [1]
 From the record, it appears that defendant-appellee Morrison Knudsen Corporation Long-Term Disability Plan took no part in the decision to terminate benefits which plaintiff challenges on this appeal, although plaintiff contended in the trial court that Morrison Knudsen participated in the claim review process. Podolan, 909 F.Supp. at 1391-92
 
 
 [2]
 We have reviewed the statements from Podolan and her mother-in-law, but not the vocational report, since it was not included by Podolan in the Excerpts of Record. However, we have examined a statement from the vocational expert which purports to summarize the conclusions he reached in his report
 
 
 [3]
 Podolan also claims that the various procedural violations of which she complains amounted to a denial of procedural due process. Aetna contends the due process argument cannot be considered now because it was not raised before the district court. Since, as noted above, Aetna provided Podolan with a "full and fair" review process, Podolan's due process claim fails, even assuming such a claim could be asserted against a private, i.e., non-state, actor. Had due process requirements not been complied with, the review process necessarily would not have been fair