John P. McKENZIE, Plaintiff–Appellant,

v.

GENERAL TELEPHONE COMPANY OF CALIFORNIA, dba GTEL, et al., Defendants–Appellees.

No. 93–15532.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 15, 1994.

Decided Dec. 5, 1994.

**1312**

Andrew H. Lange, Lange & Lange, San Francisco, CA for plaintiff-appellant.

Michael W. Melendez, Sonnenschein, Nath & Rosenthal, San Francisco, CA, for defendants-appellees.

Before: FERNANDEZ, RYMER, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

## OVERVIEW

John P. McKenzie (McKenzie) brought suit against The Travelers Insurance Company (Travelers), GTEL, GTE Corporation, and GTE Long Term Disability Plan (Plan) pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, to recover long-term disability benefits.[1] Specifically, McKenzie relies on 29 U.S.C. § 1132(a)(1)(B) which provides a cause of action for benefits due under the Plan. McKenzie challenges Travelers' re-evaluation of his disability pursuant to a more strict standard after eighteen months of disability. We affirm the district court's grant of summary judgment in favor of the appellees, but hold that the district court's consideration of vocational evidence, which was not in the administrative record, was improper and unnecessary.

## FACTS AND PROCEDURAL HISTORY

In September 1987, McKenzie was hired by GTEL, an affiliate of GTE, to fill the position of Regional Service Manager. As a management level employee of GTEL, McKenzie qualified to participate in the Plan. The Plan is a contributory plan which provides for both short-term and long-term disability benefits and is underwritten by Travelers.

Eligibility for long-term disability benefits requires an employee to be "totally disabled" as defined by the Plan. During the first eighteen months of disability, an employee is

---

1. McKenzie also brought suit against the GTE Medical Benefits Plan, the GTE Pension Plan, and the GTE Life Insurance Plan which automatically ceased as a result of Travelers' withdrawal of long-term disability benefits.

totally disabled if he cannot perform his own or a similar occupation. After the first eighteen months of disability, the "any occupation" standard applies. Under this standard, an employee must be incapable of performing any occupation in order to be totally disabled.[2]

According to McKenzie, he received an overview of the Plan during the GTEL interview process and an enrollment sheet during GTEL orientation after he was hired. McKenzie does not believe he was given a Summary Plan Description (SPD) as required by 29 U.S.C. §§ 1021 and 1024(b). Instead, he claims that he did not receive an SPD until he became disabled. Travelers did provide McKenzie with a copy of the Plan upon his request when he applied for long-term disability benefits. Also, when it initially approved his disability benefits, Travelers sent him a letter setting forth the applicable standards for total disability. Finally, when Travelers terminated his long-term disability benefits, it sent McKenzie a letter setting forth and relying on the "any occupation" standard. McKenzie concedes the terms of the Plan were not intentionally concealed.

Approximately sixteen months after he was hired, McKenzie began experiencing acute back pain and sought medical attention from Dr. Gerald Keane (Keane). In January 1989, Keane placed McKenzie on temporary disability, providing the necessary medical authorization for disability leave. During this period of temporary disability, McKenzie received short-term disability benefits under the Plan. He resumed work at GTEL in mid-April 1989. Again, on May 22, 1989, Keane placed McKenzie on temporary disability, and McKenzie received short-term disability benefits until May 25, 1989, when GTEL terminated his employment due in part to his absences from work. After his termination, McKenzie applied for long-term disability benefits. In October 1989, Travelers approved McKenzie's request with benefits beginning retroactively on August 26, 1989.

Travelers undertook further review of McKenzie's disability, as its eighteen-month anniversary approached, to determine whether McKenzie was totally disabled under the "any occupation" standard. In response to this review, Keane opined that McKenzie remained disabled. On two occasions, Travelers requested McKenzie submit to an independent medical examination, and McKenzie declined to be examined by the doctor selected by Travelers. However, he was examined by a doctor of his own choosing, Dr. E.A. Baciocco (Baciocco), a board-certified orthopedic surgeon. Baciocco noted "evidence of some lateral recess stenosis, along with foraminal stenosis at L4–5 and a small central disc herniation at C4–55 in the neck." However, despite this evidence, Baciocco opined that there were "very few objective signs and evidence of neurological disease." Further, Baciocco noted he was "somewhat nervous" by the inconsistency between McKenzie's physical condition and his inability to work for two years given that his previous occupation did not involve heavy physical exercise. Baciocco further noted this inconsistency was difficult to explain.

In response to Baciocco's report, Travelers terminated McKenzie's benefits because objective medical documentation did not support a conclusion of total disability under the "any occupation" standard. After Travelers terminated benefits, McKenzie provided Travelers with the medical opinion of Dr. David L. Kneapler (Kneapler), a specialist in rheumatology. Kneapler noted stiffness of the back in the supine position, some degenerative disk disease, and the effects of McKenzie's prior laminectomy in his lumbo-

---

2. The specific provisions of the Plan defining total disability are as follows:

   1. During the first 18 months only of absence from work because of disability you will be assumed to be totally disabled if because of disability you are unable (as determined by The Travelers) to perform the normal duties or your regular occupation for any Employer or an alternate occupation with similar earnings potential and you are not engaged in any other occupation or employment for wage or profit; and,

   2. [A]fter the first 18 months you will be considered totally disabled only if you are completely unable to engage in any and every duty pertaining to any occupation or employment for wage or profit for which you are or become reasonably qualified by training, education or experience.

**1314**

sacral spine. However, Kneapler noted that "[p]hysical examination revealed a healthy-appearing man with a normal general exam." Travelers found Kneapler's report to be "unremarkable" and reaffirmed its decision that McKenzie was not totally disabled.

McKenzie filed suit in state court seeking benefits under the Plan, and the case was removed to federal district court. The parties brought cross-motions for summary judgment, and the district court held that Travelers was not estopped from applying the "any occupation" standard. However, applying an arbitrary and capricious standard, it further held that Travelers' withdrawal of disability benefits pursuant to the "any occupation" standard was not supported by substantial evidence because Travelers had failed to consider vocational evidence. To remedy this error, the district court remanded the case to Travelers for a vocational assessment.

On remand, Cherie King (King), Travelers' in-house rehabilitation counselor, performed a vocational assessment and transferable skills analysis and concluded that McKenzie was qualified for ten different categories of jobs listed in the Dictionary of Occupational Titles, including several managerial positions. Travelers also hired Dr. Lawrence Deneen (Deneen) to perform a vocational assessment and labor market survey. Deneen concluded that, in light of McKenzie's educational background, he was qualified for 848 job openings listed in two area counties.

In response to Travelers' vocational evidence, McKenzie requested that discovery be reopened so he could depose Travelers' vocational experts. This request was denied. However, McKenzie did obtain the declaration of a vocational counselor, Yanela Burke (Burke), which challenged Deneen and King's reports.

All of the vocational evidence obtained on remand, including the reports of Deneen, King and Burke, were submitted directly to the district court. Based on this evidence,

the district court granted summary judgment for Travelers, holding that Travelers' vocational assessment was supported by substantial evidence.

McKenzie appeals the district court's judgment for Travelers challenging the application of the "any occupation" standard; the remand for new evidence and review of that evidence; and the district court's grant of summary judgment for Travelers.

## DISCUSSION

### A. Standard of Review

■■■ "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). When a plan fiduciary has discretionary authority, the proper standard of review for ERISA claims brought under § 1132(a)(1)(B) is arbitrary and capricious. *See Madden v. ITT Long Term Disability Plan,* 914 F.2d 1279, 1283–84 (9th Cir.1990), *cert. denied,* 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991). McKenzie concedes that the Plan gives Travelers discretionary authority to determine his eligibility for benefits. Thus, Travelers' decision to terminate McKenzie's benefits is reviewed pursuant to an arbitrary and capricious standard or for abuse of discretion.[3] We review the district court's application of this standard and its grant of summary judgment *de novo. See id.* at 1283.

### B. Application of the "Any Occupation" Standard

McKenzie argues that Travelers should be estopped from reevaluating his disability and denying benefits under the "any occupation" standard because it failed to provide him with an SPD. Addressing this claim, the

3. Our recent decision in *Taft v. Equitable Life Assurance Soc'y,* 9 F.3d 1469 (9th Cir.1993), uses the term "abuse of discretion" in place of "arbitrary and capricious," but we indicated that we intended to make no distinction between the two

terms. *Id.* at 1471 n. 2; *see also Patterson v. Hughes Aircraft Co.,* 11 F.3d 948, 949 (9th Cir. 1993). Likewise, in this case, we use the terms interchangeably.

district court held that McKenzie had failed to demonstrate Travelers' procedural violation caused him substantive harm. We agree and hold that the "any occupation" standard is applicable.

McKenzie argues that we should find substantive harm "automatically follows when the procedural violation results in a failure to disclose[ ] provisions that go[ ] to the very essence of coverage." Apparently, McKenzie is requesting that we presume substantive harm when benefits are denied pursuant to provisions of the Plan which were not properly disclosed. Alternatively, he argues there is a triable issue of fact that he suffered substantive harm as a result of the procedural violation.

■ The district court relied on our decision in *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353–54 (9th Cir.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985), to hold that McKenzie had failed to demonstrate substantive harm as a consequence of Travelers' failure to provide him with an SPD. In *Blau*, the plaintiff sought benefits under an ERISA plan's severance pay policy. The undisputed facts showed that the provision of the plan at issue had been intentionally concealed from beneficiaries and that the defendants failed to comply with virtually every applicable mandate of ERISA. *Id.* at 1353. "[T]here was no summary plan description, no claims procedure, and no provision to inform participants in writing of anything." *Id.* Furthermore, the defendants were attempting to impose a standard not contained in the terms of the plan. *Id.* at 1354. We held that "[o]rdinarily, a claimant who suffers because of a fiduciary's failure to comply with ERISA's procedural requirements is entitled to no substantive remedy." [4] *Id.* at 1353. However, we created an exception to this general rule, holding that if continuing procedural violations result in "substantive harm," then "a

court must consider [such violations] in determining whether the decision to deny benefits in a particular case was arbitrary and capricious." *Id.* at 1354. We did not define substantive harm in *Blau*, but instead, we presumed it from the defendants' egregious procedural violations.[5] *See id.* ("When procedural violations rise to the level that they have in this case, they alter the substantive relationship between employer and employee . . . .").

■ We decline to presume that Travelers' procedural violation, caused by its failure to give McKenzie an SPD, resulted in substantive harm. McKenzie's case can easily be distinguished from *Blau*. McKenzie concedes that, unlike the defendants in *Blau*, Travelers did not intentionally conceal the terms of the Plan. Nor has McKenzie claimed Travelers was unfairly administering the Plan by applying standards which are not embraced within its terms; the "any occupation" standard is clearly set forth in the Plan. *See Clark v. Washington Teamsters Welfare Trust*, 8 F.3d 1429, 1432 (9th Cir.1993) (distinguishing *Blau* as based on "flagrant disregard of the clear terms of the plan"); *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 920–21 (3rd Cir.1990) (distinguishing *Blau* on grounds that plan was not administered unfairly or actively concealed), *cert. denied*, 499 U.S. 920, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991). Furthermore, Travelers informed McKenzie of the applicable standards under the Plan on several occasions. Travelers gave him a copy of the Plan pursuant to his request when he was applying for long-term benefits; sent him a letter awarding long-term benefits and setting forth the standards for total disability, including the "any occupation" standard; and finally, sent him a termination letter which relied on the "any occupation" standard. Thus, McKenzie had adequate notice of the applicable standard, and

---

**4.** A "substantive remedy" is the retroactive reinstatement of benefits. *Grossmuller v. International Union, U.A.W.*, 511 F.Supp. 709, 711 (E.D.Pa.1981).

**5.** Courts have limited *Blau's* finding of substantive harm to its facts. As one court noted, "[c]ourts have either distinguished the facts of *Blau* or criticized its holding to find that employ-

ers' procedural violations of ERISA did not result in substantial harm." *United Paperworkers v. International Paper Co.*, 777 F.Supp. 1010, 1020 n. 22 (D.Me.1991) (collecting cases). Consequently, *Blau* is the only example of a case in which substantive harm resulting from procedural violations has been presumed.

Travelers' failure to provide him with an SPD did not prejudice his opportunity to obtain a full and fair review of his claim. Consequently, we neither presume substantive harm nor find a triable issue of fact regarding substantive harm which might preclude the application of the "any occupation" standard, and we review McKenzie's claim to determine whether he is entitled to benefits under this standard.

### C. Vocational Evidence

The district court held Travelers' decision to terminate McKenzie's benefits was not supported by substantial evidence because Travelers failed to consider vocational evidence in determining total disability under the "any occupation" standard, and it remanded to Travelers for a vocational assessment of McKenzie's abilities. On remand, Travelers apparently made no redetermination of McKenzie's claim, but instead merely collected vocational evidence and submitted it directly to the district court. McKenzie, likewise, submitted vocational evidence to the district court, although he was denied the opportunity to depose Travelers' vocational experts.

McKenzie challenges the district court's consideration of vocational evidence after remand. The thrust of McKenzie's argument is that, because the vocational evidence was submitted directly to the district court, Travelers did not exercise any discretion, and the district court reviewed new evidence not in the administrative record. We agree that the district court improperly considered the vocational evidence which was not in the administrative record.

In *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469 (9th Cir.1993), the district court relied on testimony which was not part of the administrative record. *Id.* at 1471. We held that the abuse of discretion standard "permits the district court to 'review only the evidence presented to the plan trustees.'" *Id.* (brackets omitted) (quoting *Jones v. Laborers Health & Welfare Trust Fund*, 906 F.2d 480, 482 (9th Cir.1990)). We reasoned that "[p]ermitting a district court to examine evidence outside the administrative record would open the door to the anomalous conclusion that a plan administrator abused its discretion by failing to consider evidence not before it." *Id.* at 1472. We also noted that such an expansive review by the district court would impede one of ERISA's primary goals of providing "a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Id.* (quotation omitted).

■ As in *Taft*, we hold that the district court may not consider "new evidence," *i.e.*, evidence which was not part of the administrative record. Under the abuse of discretion standard, the district court may review only evidence which was presented to the plan trustees or administrator. In this case, the vocational evidence was never presented to Travelers for a determination of McKenzie's eligibility for benefits under the "any occupation" standard. Instead, this evidence was submitted by both Travelers and McKenzie directly to the district court. Because this evidence was not in the administrative record, we hold that the district court erred in relying on it to grant summary judgment for Travelers.

■ However, despite the district court's error in considering vocational evidence outside the administrative record, we affirm its grant of summary judgment for Travelers on other grounds. *See Shawmut Bank, N.A. v. Kress Assocs.*, 33 F.3d 1477, 1484 (9th Cir. 1994) (court of appeals may affirm summary judgment on "any ground supported by the record"). We conclude that in this case the district court did not need to remand for consideration of vocational evidence because Travelers' decision that McKenzie was not disabled under the "any occupation" standard was supported by substantial evidence even absent vocational evidence.

The district court relied on *Jenkinson v. Chevron Corp.*, 634 F.Supp. 375 (N.D.Cal. 1986), to remand to the administrator for consideration of vocational evidence prior to granting summary judgment for Travelers. The court in *Jenkinson* held that:

Logic dictates that a determination of whether the "any occupation" definition of disability has been met by a claimant requires consideration of two types of evidence. First, there must be evidence as to the medical condition or degree of impairment of the claimant. Additionally, there

must be evidence as to the existence of jobs for those of the claimant's qualifications, or potential qualifications, in light of his or her impairment.

*Id.* at 379 (footnote omitted). The court concluded that the second type of evidence, *i.e.*, vocational evidence, must be given by "someone knowledgeable about the physical demands and requirements of occupations for which a claimant might be qualified." *Id.*

Some courts have relied on *Jenkinson* and held that when the "any occupation" standard is applicable, vocational evidence should be considered. *See Gunderson v. W.R. Grace & Co. Long Term Disability Income Plan,* 874 F.2d 496, 499 (8th Cir.1989) (holding that "before terminating benefits, the Plan should have obtained a vocational expert's opinion to determine if [the claimant] is presently capable, in light of his physical impairment, to perform 'any occupation' "); *but see Potter v. Connecticut Gen. Life Ins. Co.,* 901 F.2d 685, 686 (8th Cir.1990) (holding consideration of vocational evidence unnecessary where other evidence conclusively establishes the claimant had no disability); *Jenkinson,* 634 F.Supp. at 379 n. 3 (noting that there is "no need for vocational evidence where there is indication of … no impairment"). Conversely, other courts have rejected the notion that a plan administrator is required to obtain vocational evidence before making a final determination of eligibility under the "any occupation" standard. *See Duhon v. Texaco, Inc.,* 15 F.3d 1302, 1309 (5th Cir.1994); *Block v. Pitney Bowes, Inc.,* 952 F.2d 1450, 1455 (D.C.Cir.1992).

In *Duhon,* the Fifth Circuit held that a plan administrator did not necessarily abuse its discretion by failing to consider vocational evidence in making a final determination of disability. *Id.* at 1309. Instead, the court held that "the reviewing court [may] decide, on a case-by-case basis, whether under the particular facts the plan administrator abused his discretion by not obtaining the opinion of a vocational rehabilitation expert." *Id.* In the particular case of *Duhon,* the failure to meet the "any occupation" standard "only required a finding that Duhon could perform any job for which he is, or may become, qualified by education, training, or experience." *Id.* (quotation omitted). The evidence demonstrated that "Duhon was a

sixty-five year old man in overall good health with a high school diploma and moderate restrictions on his physical ability." *Id.* In light of this evidence, the court held that "[i]t was not an abuse of discretion for the plan administrator to conclude that Duhon was capable of performing some type of occupation without obtaining the opinion of a vocational rehabilitation expert." *Id.* (footnote omitted). *See also Block,* 952 F.2d at 1455 (holding that claimant's limitations on standing (two hours), walking, lifting (20 pounds), and bending (four out of eight hours) were not so great as to conclude that claimant would not be qualified for any job).

In accord with the Fifth Circuit and the District of Columbia Circuit, we hold that consideration of vocational evidence is unnecessary where the evidence in the administrative record supports the conclusion that the claimant does not have an impairment which would prevent him from performing some identifiable job. The plan administrator is not required in every case where the "any occupation" standard is applicable to collect vocational evidence in order to prove there are available occupations for the claimant.

In this case, as in *Duhon,* the language of the "any occupation" standard is not demanding. In order for Travelers to find that McKenzie is not totally disabled, it requires only that McKenzie be able to perform a job for which he is qualified or for which he can reasonably become qualified by training, education or experience. Substantial evidence in the administrative record supports the conclusion that McKenzie could perform other occupations. The record indicates that McKenzie is fifty-two years old, and he has a bachelor's degree and a master's degree. Thus, McKenzie is not unemployable because of his age, *see Duhon,* 15 F.3d at 1308 ("people in their sixties and seventies … are employed and employable through the workplace today"), and he is highly educated. Further, the medical evidence does not support the conclusion that McKenzie is unemployable. At most, this evidence suggests that McKenzie might have a slight impairment. Baciocco opines that there is an inconsistency between McKenzie's physical condition and his inability to work for two years given that his previous occupation did not involve heavy physical exercise. Thus,

his opinion supports the conclusion that McKenzie not only could work at other occupations which did not involve heavy exercise, but he may even be able to work at his old occupation. Likewise, Kneapler states that McKenzie appears healthy and normal. Based on the evidence in the administrative record, we hold that Travelers did not abuse its discretion or act arbitrarily and capriciously when it concluded that McKenzie's disability did not prevent him from pursuing any occupation.

## CONCLUSION

We hold that Travelers was not estopped to apply the "any occupation" standard and its procedural violation caused by failing to provide McKenzie with an SPD did not cause McKenzie substantive harm. Further, we hold that the district court erred by considering vocational evidence which was not in the administrative record. However, despite this error, we affirm the district court's summary judgment for the appellees and hold that substantial evidence supports Travelers' denial of benefits under the "any occupation" standard.

AFFIRMED.