125 F.3d 858
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Claudette HONDA, Plaintiff-Appellant,
v.
SUNSHINE BISCUIT LONG TERM DISABILITY PLAN and Liberty
Mutual Insurance Company, Defendants-Appellees.
 No. 95-56857.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 7, 1997.
Decided Oct. 7, 1997.
 
 1
 Appeal from the United States District Court for the Central District of California, No. CV-94-6291-DT(CE); Dickran Tevrizian District Judge, Presiding.
 
 
 2
 Before: FLETCHER and PREGERSON, Circuit Judges, and WEXLER,** District Judge.
 
 
 3
 MEMORANDUM*
 
 I. OVERVIEW
 
 4
 Honda was denied continued long term disability benefits by Appellee Liberty when Liberty concluded that Honda was capable of performing certain jobs requiring sedentary work that would accommodate her physical limitations caused by her injuries. Upon cross motions for summary judgment, the district court upheld Liberty's decision to terminate Honda's benefits applying an abuse of discretion standard. Honda argued that the plan governing her benefits did not delegate sufficient authority to Liberty as plan administrator to justify an abuse of discretion standard. In addition, Honda argues that Liberty relied upon flawed vocational evidence that did not take into account her subjective complaints of pain, when it concluded that she was not totally disabled. We affirm the district court's grant of summary judgment for Appellees because the district court applied the correct standard of review and because Liberty's decision did take into account Honda's subjective complaints of pain in concluding that she was not totally disabled.
 
 II. JURISDICTION
 
 5
 The district court exercised jurisdiction under 29 U.S.C. § 1132(e). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.
 
 
 6
 III. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
 
 
 7
 Honda is a 45 year old woman who worked as a display worker/sales representative of the Sunshine Biscuit Company ("Sunshine"). As such, she was a participant in the Sunshine Biscuit Long Term Disability Plan (the "Plan"). The Plan was fully insured by defendant Liberty Mutual Insurance Company ("Liberty"). Liberty was the administrator of the Plan. On June 23, 1989, Honda slipped on a greasy floor at a supermarket and fell on her shoulders and head. She claims that she is totally disabled from performing any occupation.
 
 The Plan
 
 8
 The Plan provides benefits for long term disability as follows:
 
 
 9
 "TOTAL DISABILITY" and TOTALLY DISABLED means during the elimination period and the next 24 months of the disability the insured is:
 
 
 10
 unable to perform all of the material and substantial duties of his/her occupation on a full time basis because of disability:
 
 
 11
 a. caused by injury or sickness;
 
 
 12
 b. that started while insured under this coverage; and
 
 
 13
 after 24 months of benefits have been paid, the insured is unable to perform with reasonable continuity all of the material and substantial duties of his/her own or any other occupation for which he/she is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.
 
 
 14
 The Plan contains several provisions for the review and determination of coverage by Liberty as plan administrator. First, the Plan states that in order to seek benefits, a plan participant must provide the administrator with "satisfactory proof of disability due to sickness or accident, as requested" and that benefits continue "as long as you have satisfied the insurance company's requirements for proof of disability." Second, Liberty, "may ask that you be examined by a physician of their (sic) choice as proof that you continue to be disabled." Third, the Plan provides:
 
 
 15
 Claim forms and instructions for filing claims can be obtained from the Plan Administrator. If your claim is denied, you will receive notice in writing of the reason for the denial. If you wish to have a denied claim reviewed, you or your authorized representative must file a written request within 60 days after receipt of the notice of denial with the Claims Servicing office which handled your claim. This written request for review should state the reason why you feel your claim should not have been denied and should include any additional documentation (medical and dental records, etc.) which you feel supports your claim. You may review pertinent documents. You will receive notice of a decision within 60 days after the requests for review, unless special circumstances require an extension of time, in which case you will be notified within 120 days after receipt of a request for a review.
 
 Honda's injuries
 
 16
 With respect to her left shoulder, Honda is restricted from lifting or carrying more than five pounds, pushing or pulling, or reaching above shoulder height. She suffers from slight pain increasing to slight to moderate pain with lifting or carrying five pounds. The pain becomes moderate to severe when pushing or pulling, or when lifting more than five pounds. The pain also becomes severe when reaching overhead.
 
 
 17
 With respect to her knees, Honda must avoid repetitive squatting, kneeling, twisting, stair climbing, ladder climbing, and must have the ability to make frequent changes in position. The pain in her knees is constant and slight and becomes moderate with sitting more than twenty minutes, standing or walking for more than ten minutes, stooping, climbing, twisting, and arising. Honda complains of severe pain when she kneels, squats, crawls or runs. She also has slight pain getting in and out of a car.
 
 Liberty's denial of benefits
 
 18
 Honda filed her application for long term disability benefits on May 31, 1990. Liberty approved Honda's application effective May 12, 1990. The Plan paid Honda's benefits for the first 24 months because she was disabled from her current occupation. On September 22, 1992, Liberty notified Honda that her benefits would be discontinued as of October 31, 1992. Honda appealed, and on November 4, 1994 Liberty sent a letter upholding its denial of continued benefits.
 
 Information reviewed by plan administrator
 
 19
 Dr. Douglas Jackson evaluated Honda's knee and on May 13, 1992 wrote that Honda is not totally disabled from any occupation. Dr. Jackson concluded that she should do no repeated bending, kneeling, climbing or stooping, and no prolonged walking or standing; he limited her to sedentary work. He recommended weight reduction, selective exercising, and avoiding aggravating activities.
 
 
 20
 An orthopedic evaluation by Dr. Rubin in 1989 concludes that Honda "is not disabled at the present time.... I do not feel that there will be a permanent disability. I feel that with the appropriate rehabilitation program, she will be able to be returned to her pre-injury status." An attending physician's statement by Dr. Rubin, dated May 25, 1990, attached to Honda's application, states that Honda is not totally disabled from either her regular occupation or any occupation and that she was able to go to work to report for light duty prior to the date of the statement.
 
 
 21
 An October 30, 1990 supplemental attending physician's statement by Dr. Rubin concluded that Honda was disabled from her job and any other work at that time but he expected a fundamental or marked change in the future with respect to her capacity to perform other work. His April 10, 1991 supplemental statement states that Honda is totally disabled from her job but not all other work. On May 8, 1991, Dr. Rubin reported that Honda was permanently partially disabled and restricted her work activities by prohibiting lifting more than five pounds, pushing, pulling and reaching above the shoulder. In other supplemental statements dated November 5, 1992 and November 13, 1992, Dr. Rubin stated that according to the Plan's definition of total disability, Honda was not totally disabled. His final diagnosis reflects her work restriction due to her knee and shoulder discussed above.
 
 
 22
 Liberty obtained the services of at least three organizations to evaluate Honda's injuries and work prospects. On June 19, 1990, Liberty received a work capacity evaluation through Pangburn Vocational Associates. Jeanne Pangburn, a vocational rehabilitation counselor concluded that:
 
 
 23
 Honda participated in 5 days of evaluation from 6-11-90 to 6-15-90 with 100% attendance of scheduled hours. Although the client reported having constant moderate discomfort in the right knee and left shoulder, she was able to effectively cope with symptoms with no use of medications. She appeared to put forth her best effort on work samples and tests, even when her interest was low.
 
 
 24
 Test scores suggest that Honda has above average reasoning and learning ability, is able to comprehend written material above the 12th grade level but often needs extra time to read for accuracy of information. Perceptual testing showed a tendency to reverse shapes and letters. Form perception was average but clerical perception of number, letter and symbol detail was below average. Basic math was average except for working with fractions. She has good potential to improve math functions with training but most likely will have difficulty improving spelling and written grammar to a competitive level for business writing. For complex report writing, the client could dictate information and have the tape transcribed and proofread by another person.
 
 
 25
 At this time, based on the client's observed tolerances and subjective data, it appears that Honda has the capability of participating in vocational rehabilitation activities on a full-time and reliable basis.
 
 
 26
 Liberty retained the Medical Review Institute of America to independently review the medical records. In a letter dated April 1, 1993, the Institute stated that:
 
 
 27
 Based on the submitted records, this patient's condition does not meet the criteria of the submitted definition of total disability.
 
 
 28
 The subjective pain complaints due to the above conditions would not justify limiting the patient from a sedentary occupation with the listed restrictions. The findings on physical exam, such as range of motion, strength, neuromuscular status, the absence of severe radiographic abnormalities, as well as the surgical pathology findings and surgical treatment given do not objectively support any subjective pain complaints to limit the patient from reasonably doing sedentary type work within the listed restrictions.
 
 
 29
 Liberty produced two letters from a second vocational expert, Comprehensive Rehabilitation Associates, Inc. ("CRAI"). The first letter is a VDARE Transferability Process Report setting forth seven possible occupations that Honda could perform that are available in the market. Specifically, the report opined that "the most feasible options in terms of availability in the labor market in the Southern California area" appear to be graphic designer and secretary. A labor market survey by CRAI dated July 13, 1992 adds that "the labor market appears to be positive at this juncture for graphic design and secretary." In producing the report, CRAI references Honda's physical restriction of no prolonged sitting or sedentary work, and her particular circumstances of limited experience were taken into account. Liberty followed up with CRAI in 1993, and its response dated March 12, 1993 confirms that its earlier report took into account Dr. Rubin's and Dr. Jackson's work restrictions and that the listed occupations in the July 1, 1992 report would be appropriate given these limitations. The letter also identifies five additional occupations that Honda could perform and that the labor market would support: credit card clerk, collection clerk, receptionist, information clerk, and telemarketer.
 
 
 30
 In response to these vocational experts, Honda procured the opinion of Thomas Perrin, PhD. Perrin opines that the occupations that CRAI identified require greater skill than Honda had previously acquired and that they are therefore not transferable skills. Addressing graphic design and secretarial jobs, Perrin believes that graphic design work requires two to four years of training and preparation and that secretarial work requires typing fifty words a minute while Honda can type fifteen words per minute and can only sit thirty minutes.
 
 The district court action
 
 31
 Plaintiff initiated this action on September 27, 1994 seeking declaratory relief that she is entitled to long term disability benefits. After the parties filed cross-motions for summary judgment, the district court, the Honorable Dickran Tevrizian presiding, ordered and entered judgment on defendant's motion on November 22, 1995. This appeal ensued.
 
 IV. DISCUSSION
 
 32
 A. Standard of review for the plan administrator's conclusions
 
 
 33
 The Court of Appeals reviews the district court's review of the plan administrator's conclusions de novo. McKenzie v. General Tel. Co. of California, 41 F.3d 1310, 1314 (9th Cir.1994). The first step in adjudicating any ERISA claim for benefits requires this Court to determine the appropriate standard of review of the plan administrator's conclusions. A denial of benefits challenged under ERISA section 1132(a)(1)(B) is reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). However, when the plan administrator has discretionary authority to determine eligibility for benefits or to construe the terms of the plan, an abuse of discretion standard will be utilized.[1] Id.
 
 
 34
 This Court has addressed the issue of whether a plan administrator has been given discretion on several occasions and has "not been stingy in [its] determinations that discretion is conferred upon plan administrators." Snow v. Standard Ins. Co., 87 F.3d 327, 330 (9th Cir.1996). In fact, we have held that a plan confers discretion when it "includes even one important discretionary element, and the power to apply that element is unambiguously retained by its administrator." Bogue v. Ampex Corp., 976 F.2d 1319, 1325 (9th Cir.1992). The Snow Court established that a plan which provides that "there will be no benefit payment unless [the administrator] is presented with what it considers to be satisfactory written proof of the claimed loss" would give rise to an abuse of discretion standard. Snow 87 F.3d at 330. However, even when the plan confers discretion upon the administrator, the court would employ greater scrutiny of its decision if the plan administrator were operating under a "true" conflict of interest. However, for greater scrutiny to apply, the beneficiary must provide "material probative evidence [of a conflict of interest] beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations to the beneficiary." Atwood v. Newmont Gold Co., 45 F.3d 1317, 1323 (9th Cir.1995). In Snow, an apparent conflict of interest existed because the insurer was also the administrator. However, an abuse of discretion was still applied because there was no real evidence other than an unfavorable result for the plaintiff that the conflict actually impaired the administrator's decision. See Snow, 87 F.3d at 331.
 
 
 35
 As noted previously, the Plan contains several provisions for the review and determination of coverage by Liberty as plan administrator. Based on language in the Plan granting Liberty authority to determine eligibility, the district court applied an abuse of discretion standard of review. The Plan explicitly requires that the administrator be satisfied as to proof of disability before granting benefits. Accordingly, the district court did not err in applying an abuse of discretion standard. See Patterson v. Hughes Aircraft Co., 11 F.3d 948, 949-50 n. 1-2 (9th Cir.1993) (showing comparable plan provisions which this Court has held have conferred discretion upon the plan administrator and to which the abuse of discretion standard applies). Furthermore, there was no material probative evidence of a conflict of interest here beyond the facts that Liberty is both the insurer and administrator and that it found against Honda in her claim for benefits. Accordingly, the district court correctly applied the abuse of discretion standard to the administrator's decision in this case.
 
 
 36
 B. Subjective evidence of pain and vocational evidence
 
 
 37
 Honda asserts that even under an abuse of discretion standard, Liberty abused its discretion by relying upon flawed vocational evidence which failed to account for Honda's physical limitation and subjective claims of pain. Honda reasons that the vocational evidence was fatally flawed because it failed to consider the impact of Honda's pain on her ability to perform the work. In addition, Honda argues that she is not qualified to perform the jobs that the vocational experts identified as alternatives for Honda.
 
 
 38
 In the absence of an obligation to do so, Liberty obtained vocational evaluations. See McKenzie, 41 F.3d at 1317 (holding that "[t]he plan administrator is not required in every case where the 'any occupation' standard is applicable to collect vocational evidence in order to prove there are available occupations for the claimant."). Liberty obtained the services of at least three organizations to evaluate Honda's injuries and work prospects. On June 19, 1990, Liberty received a work capacity evaluation through Pangburn Vocational Associates. Liberty retained the Medical Review Institute of America to independently review the medical records. Liberty also retained a second vocational expert, CRAI, to evaluate Honda's alternative work possibilities.
 
 
 39
 After evaluating Honda for five days, Ms. Pangburn's work capacity evaluation contained specific references to Honda's subjective complaints of pain.
 
 
 40
 Subjective discomfort ratings reported by Honda periodically throughout each work day were consistent with observations made by the evaluation staff.
 
 
 41
 Objective signs of discomfort and disability included occasional changing postures from sitting to standing and vice versa, and massaging the left shoulder.
 
 
 42
 Although some discomfort was reported and observed during this evaluation, a competitive work performance was consistently demonstrated by the client for up to 2 hours without a break. In general, the client demonstrated effective coping skills for dealing with discomfort in an appropriate manner.
 
 
 43
 The evaluator referenced Honda's own opinion that she could work 8 hours per day and 40 hours per week on a regular basis. The evaluator concluded that Honda's "attendance, stamina, and subjective factors combined would suggest that Honda would be able to participate in a full-time work situation or training program."
 
 
 44
 Liberty produced two letters from a second vocational expert, CRAI. The first letter is a VDARE Transferability Process Report setting forth seven possible occupations that Honda could perform that are available in the market. Specifically, the report opined that "the most feasible options in terms of availability in the labor market in the Southern California area" appear to be graphic designer and secretary. A labor market survey dated July 13, 1992 by CRAI adds that "the labor market appears to be positive at this juncture for graphic design and secretary." In producing the report, CRAI references Honda's physical restriction of no prolonged sitting or sedentary work, and her particular circumstances of limited experience were taken into account. Liberty followed up with CRAI in 1993, and its response dated March 12, 1993 confirms that its earlier report took into account Dr. Rubin's and Dr. Jackson's work restrictions and that the listed occupations in the July 1, 1992 report would be appropriate given these limitations. The letter also identifies five additional occupations that Honda could perform and which the labor market would support, those being credit card clerk, collection clerk, receptionist, information clerk, and telemarketer.
 
 
 45
 Finally, Liberty retained the Medical Review Institute of America to independently review the medical records. In a letter dated April 1, 1993 the Institute stated that:
 
 
 46
 Based on the submitted records, this patient's condition does not meet the criteria of the submitted definition of total disability.
 
 
 47
 The subjective pain complaints due to the above conditions would not justify limiting the patient from a sedentary occupation with the listed restrictions. The findings on physical exam, such as range of motion, strength, neuromuscular status, the absence of severe radiographic abnormalities, as well as the surgical pathology findings and surgical treatment given do not objectively support any subjective pain complaints to limit the patient from reasonably doing sedentary type work within the listed restrictions.
 
 
 48
 The opinion of the Medical Review Institute specifically addresses whether Honda's subjective pain would affect her ability to perform sedentary work which accounts for the doctor's work restrictions. Moreover, the opinions of the vocational experts specifically refer to her subjective complaints of pain and her work limitations in evaluating her ability to perform occupations.
 
 
 49
 Honda produced her own vocational expert, Dr. Thomas Perrin, who opined that she was not qualified for some of the occupations which were recommended by Liberty's vocational experts. Significantly, Dr. Perrin did not state that Honda was totally disabled or that she could perform no sedentary jobs.
 
 
 50
 The decision of Liberty to deny continued benefits to Honda based upon vocational reports that took into account Honda's subjective claims of pain, her physical limitations in performing sedentary work as identified by her doctors and that were consistent with the opinions of all of the medical experts who evaluated Honda was not an abuse of discretion.
 
 V. CONCLUSION
 
 51
 The district court did not err in holding Liberty did not abuse its discretion in terminating benefits. Accordingly the order of the district court granting summary judgment for the appellees is AFFIRMED. Consequently, Honda's request for attorney fees on appeal under ERISA 29 U.S.C. § 1132(g) is denied.
 
 
 
 **
 The Honorable Leonard D. Wexler, Senior United States District Judge for the Eastern District of New York, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The terms "abuse of discretion" and "arbitrary and capricious" are used interchangeably. Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1471 n. 2 (9th Cir.1994)