131 F.3d 146
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Bruce FUJIKAWA, Plaintiff-Appellant,
v.
HEWLETT-PACKARD COMPANY INCOME PROTECTION PLAN, Defendant-Appellee.
 No. 96-16131.
 United States Court of Appeals, Ninth Circuit.
 Dec. 04, 1997.
 
 1
 Appeal from the United States District Court for the Northern District of California
 
 James Ware, District Judge, Presiding
 
 2
 Before: GOODWIN and THOMAS, Circuit Judges, and SEDWICK, District Judge**
 
 
 3
 MEMORANDUM*
 
 Background
 
 4
 Bruce Fujikawa ("Fujikawa") appeals the district court's summary judgment dismissing his action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, challenging the denial of his long-term disability ("LTD") claim by Voluntary Plan Administrators, Inc. ("VPA"), the independent claim administrator for the Hewlett Packard Company Income Protection Plan ("Plan"). The decision of the district court to grant or deny a motion for summary judgment is review de novo. Tzung v. State Farm Fire and Cas. Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). A reviewing court must view the evidence in the light most favorable to the nonmoving party and determine whether there are any issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 
 5
 When a benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the exercise of that discretion is review under the arbitrary and capricious standard, or for abuse of discretion, which come to the same result. Snow v. Standard Ins. Co., 87 F.3d 327, 330 (9th Cir.1996). The parties have stipulated that the plan's provisions vest the necessary discretion in VPA to invoke the abuse of discretion standard of review. Under that standard, the court may consider only the evidence before the plan administrator at the time the administrator made its decision. Taft v. Equitable Life Assur. Soc., 9 F.3d 1469, 1471-72 (9th Cir.1993). The court may not disturb the decision of the plan administrator unless the decision was made (1) without any explanation; (2) in a way that conflicts with the plain language of the plan; or (3) based on clearly erroneous findings of fact. Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317, 1323-24 (9th Cir.1995), cert. denied, --- U.S. ---, 115 S.Ct. 1697 (1995).
 
 
 6
 Fujikawa does not claim that VPA's notice of denial was inadequate under ERISA nor does he argue that VPA's decision in any way conflicts with the plain language of the Plan. Fujikawa contends that VPA's decision was made based on clearly erroneous findings of fact. Therefore, this Court reviews de novo the district court's application of the abuse of discretion standard of review.
 
 Discussion
 
 7
 The Plan provides that to be eligible to receive LTD benefits, the employee must show, after the 39th week of receiving short-term disability ("STD") benefits, that he or she "is continuously unable to perform any occupation for which he or she is or may become qualified by reason of his or her education, training or experience." (Emphasis added). VPA initially denied Fujikawa's request for LTD benefits in April 1994; however, VPA reconsidered its decision several times until its final decision in May 1995. A review of the record reveals that VPA not only considered the opinions of several medical professionals and vocational experts, but reviewed a 1993 decision by the Social Security Administration granting Fujikawa social secuity disability benefits before finally deciding that Fujikawa was not entitled to LTD benefits.
 
 
 8
 Both of Fujikawa's doctors agree that Fujikawa was not continuously unable to perform any occupation for which he is or may become qualified by reason of his education, training or experience. Fujikawa's treating physician, internist Dr. Michael Podlone ("Podlone"), represented in a May 14, 1993, Certification of Disability that, while Fujikawa's headaches and nausea were triggered by fluorescent lights, he could return to his job if suitable modifications were made, such as no exposure to VDTs or fluorescent lights. Fujikawa's neurologist, Dr. Maung H. Aung ("Aung"), who diagnosed him with "probable multiple sclerosis or small vessel disease," submitted an Attending Physician's Statement on April 8, 1994, stating that, although Fujikawa is totally disabled from his job, he has not physical impairment or limitation of functional capacity and is not totally disabled from any other work. Further, in a letter dated June 20, 1994, Aung stated:
 
 
 9
 Although [Fujikawa] has no physical disability, I do not believe that he can return to his regular job. He may be retrained for some other position, but I cannot tell which job will be fitting for him. He may need consultation from a job retraining center, where he might learn in what position he may [be] retrained.
 
 
 10
 Additionally, neurologist Dr. H.N. McKinnon ("McKinnon"), hired by VPA to review Fujikawa's medical records and conduct an independent medical examination, concluded:
 
 
 11
 There is no diagnosis given by me, nor do I think any of the other consultants have made an adequate diagnosis. Certainly, I would not suggest any mor laboratory tests or MRI scans. These have been done almos tto exess.... There is no neurological derangement. I think that the employee cannot be considered as disabled from performing his usual duties of an informal technical engineer. He will say that he cannot possibly do them and he may well be right, but I have nothing to suggest such a disability.
 
 
 12
 Based on the opinions of Drs. Podlone, Aung, and McKinnon, VPA's conclusion that Fujikawa is not continuously unable to perform any occupation for which he is or may become qualified by reason of his education, training or experience does not reflect an abuse of discretion.
 
 
 13
 In addition to the aforementioned medical opinions, VPA also received several vocational assessments. A report submitted by James Whelan ("Whelan"), a certified rehabilitation counselor hired by Fujikawa, concluded that:
 
 
 14
 ... not only can you not reasonably be expected to function in your past employment of record in any substantive manner, but you lack any transferable skills as would enable to somehow regroup and otherwise present a package of worker skills as would enable you to alternately perform in the work world.... Your fatigability, headaches and associated feelings of nausea as connected with the physical environs of where work is performed will not permit this ... I have nothing to offer you as I am not aware of any employment wherein you can otherwise contempleta a reasonable likelihood of expectation in adequately, reliably, consistently, and productively meeting stipulated demands and requirements as considered integral to successful worker performance in an occupational setting.
 
 
 15
 However, a vocational assessment done by CEC Associates, Inc. ("CEC") at VPA's request conflicts with Whelan's opinion. CEC opined that solutions such as an office with incandescent lighting, shielding devices, flicker-free VDTs, and filters could be used to modify Fujikawa's workplace to eliminate his symptoms, which are exacerbated by exposure to fluorescent lighting and VDTs. CEC stated that Fujikawa remained employable in a variety of occupations, including specifications writer, information clerk, computer services consultant, programmer, and data recovery planner before concluding that "Fujikawa is capable of returning to his former position as an Information Technology Engineer with Hewlett-Packard and any of his other former positions, if the accommodations mentioned previously are installed in his work environment. "
 
 
 16
 After his claim was denied in August 1994, Fujikawa sent Hewlett Packard ("HP") a copy of VPA's decision, including the vocational assessments of Whelan and CEC. Larry Langdon ("Langdon"), Fujikawa's supervisor at HP, informed Fujikawa that, after considering the reports of Whelen and CEC as well as the assessment by VPA:
 
 
 17
 With the exception of the period between September '92 and April '93, you have essentially been away from the worplace for the last five years. During this time, the technology has changed dramatically. Having considered the materials described above, I concur in Mr. Whelan's assessment that "you cannot reasonably be expected to function in your past employment of record in any substantive manner," and that you lack "transferable skills which would enable you to regroup and otherwise present a package of worker skills as would enable you to alternately perform in the work world." As you are unable to perform the essential functions of your former position in the Tax Department, HP will extend your medical leave, but the extension will be without a job guarantee.... Recognizing your desire to return to work if a suitable position can be found, we will support you in your search.
 
 
 18
 Based on Langton's response, in January 1995, Fujikawa notified VPA that HP was unable to modify his work environment and requested that his disability claim be review again.
 
 
 19
 After agreeing to review Fujikawa's LTD claim once again, VPA obtained a second vocational assessment from Crawford Health and Rehabilitation ("Crawford"). Crawford's report stated, in relevant part:
 
 
 20
 Sorting out Mr. Fujikawa's employability is rather difficult as he believes that he is incapable of working as he cannot be exposed to fluorescent light or computer terminals. This is supported by Dr. Silberman who states that his medical situation is precipitated by fluorescent lights and video terminals.[1]
 
 
 21
 If one accepts Dr. Silberman's and Mr. Fujikawa's opinion that he cannot use a computer or work under fluorescent lighting for greater than 30 minutes at a time, then he certainly is employ-able only within unskilled occupations such as: Groundskeeper (DOT 301.687-018) and Courier (DOT 230.663), where he would not be required to use a computer or work under fluorescent lights for extended periods of time.
 
 
 22
 On the other hand, Dr. Augn's opinion that there is "No limitation of Functional Capacity" and Dr. MacKinnon's opinion that "The employee cannot be considered as disabled from performing his usual duties ..." then Mr. Fujikawa should be deemed capable of utilizing his skills and returning to his Information Technology Engineer occupation. He would then be capable of earning a salary comparable to his pre-disability salary.
 
 
 23
 Because VPA determined that Crawford's conclusiong were unsatisfactory and not supported by objective analysis, it hired Employability Assessment from Rehab West ("Rehab West") to conduct a vocational assessment.
 
 
 24
 In Rehab West's opinion there existed at least two alternative positions, user support analyst and computer/electronic data processing sales representative, within Fujikawa's current educational and vocational background. Rehab West outlines the nature of the work, working conditions and physical requirements, qualifications and expected wages for each position, and included a listing of companies in the Cupertino and San Jose, California, area that employ persons in such occupations. HP was not among the companies listed. Rehab West concluded that:
 
 
 25
 ... Mr. Fujikawa can secure gainful employment in one of the occupational titles listed above in review of his background and medical restrictions. They appear to be flexible and accommodating for Mr. Fujikawa's restricton of prolonged exposure to fluorescent light or video screens.
 
 
 26
 Mr. Fujikawa has extensive background in computer programming and mechanical engineering and has longevity in his employment with Hewlett-Packard. These transferable skills are exceptional for the occupations outlines.
 
 
 27
 Fujikawa argues that VPA abused its discretion because it "shopped" until it found a voccational report which supported its predetermined decision to deny his LTD claim. In an attempt to support his contention, Fujikawa relies on a note in VPA's files dated February 3, 1995, which states:
 
 
 28
 2/3/95 Based on some more recent cases, I am uncomfortable with a TSA from CEC--obtain a new one from another vendor. Provide them with all of clmts info. Let clm't know we are reviewing.
 
 
 29
 Fujikawa contends that VPA was "uncomfortable" with CEC's voational analysis after it discovered that the modifications suggested by CEC could not be implemented by HP since it realized that if HP was unable or unwilling to implement the modifications then it was highly probable that no other high tech Silicon Valley company would do so either. The letter from Langon does not address whether HP even attempted to modify Fujikawa's work environment. Instead, Langdon bases the decision on Fujikawa's employment status on his opinion that "technology has changed dramatically" and that Fujikawa does not possess the "transferable skills ... to perform in the work world. "
 
 
 30
 Fujikawa argues, based on the aforementioned notation, that VPA recognized that it could not rely on the CEC vocational assessment and determined that it must find a new vendor who would support its position. However, the record shows that each time Fujikawa requested reconsideration VPA complied and solicited additional evidence to evaluate Fujikawa's LTD claim. There is no evidence explaining the grounds for VPA's "uncomfort" with CEC's assessment nor is there reason for Fujikawa to conclude that Crawford's report supported his position that he is entitled to LTD benefits rather than VPA's conclusion denying LTD benefits. A review of Crawford's report, which merely summarizes the two possible positions without making any recommedation one way or the other, calls attention to the fact that Silberman's diagnosis, which supports the conclusion that Fujikawa is entitled to LTD benefits, was made in 1990, well before more current examinations by other neurologists, namely Aung and McKinnon. Thus, Fujikawa's argument that VPA "shopped" around for a vocational assessment which supported its predetermined decision to deny LTD benefits is unfounded. VPA did not abuse its discretion by obtaining another vocational assessment.
 
 
 31
 Fujikawa also claims Rehab West's conclusion fails to explain how he can avoid computer terminals and fluorescent lights while performing the functions of a user support analyst or a computer/EDP systems sales/customer representative. Fujikawa argues that there is no explanation because working with a computer is a sine qua non of both positions. The district court, acknowledging flaws in the Rehab West report, nevertheless correctly concluded that the record before the administrator indicates that measures can be taken to reduce Fujikawa's exposure to VDTs and fluorescent lights and that there is no evidence to support Fujikawa's contention that these adaptations could not be made by other employers.
 
 
 32
 Relying on Benitez v. Califano, 573 F.2d 653 (9th Cir.1979), Fujikawa argues that it is the administrator's obiligation to point to a specific job that plaintiff can perform in light of his education, training, experience, and medical limitations. Benitez is a decision deciding the appropriate burden to be placed on the Social Security Administration with respect to Social Security benefits. Id. at 655-56. Benitez does not address the burdens of proof in an ERISA context. Here, the Plan places the burden of producing evidnece on the plaintiff.
 
 
 33
 VPA, relying on McKenzie v. General Telephone Co. of Calif., 41 F.3d 1310, 1316 (9th Cir.1994), cert. denied, 514 U.S. 1066 (1995), argues that it went well beyond what was required for a full and fair review, inasmuch as no vocational evidence was even required to deny Fujikawa's claim. In McKenzie, an employee challenged the denial of his LTD benefits under the ERISA plan which applied the same "any occupation" standard as the present case. Despite the fact that the employee's doctors questioned whether he could return to work, the claim administrator terminated his benefits on the grounds that objective medical evidence did not support a conclusion thathe was totally disabled from any occupation. The district court rules that the administrator abused its discretion by failing to consider vocational evidence. It then remanded the case to the administrator for such an assessment, which revealed 828 job opinings in the two-county area for which the employee was qualified. Based on this evidence, the district court granted summary judgment in the employer's favor. Id. at 1313-14.
 
 
 34
 The employee appealed the district court's ruling on the grounds that the vocational expert had sent his report directly to the district court, rather than having the claims administrator reconsider its denial of benefits based on the new evidence. Thus, the district court inappropriately considered evidence not in the administrative record when it granted summary judgment to the employer. Although we agreed with the employee's analysis, we affirmed summary judgment on other grounds. After rejecting decisions of other courts that vocational evidence must be considered under the "any occupation" standard, we ruled:
 
 
 35
 In accord with the Fifth Circuit and the District of Columbia Circuit, we hold that consideration of vocational evidence is unnecessary where the evidence in the administrative record supports the conclusion that the claimant does not have an impairment which would prevent him from performing some identifiable job. The plan administrator is not required in every case where the "any occupation" standard is applicable to collect vocational evidence in order to prove there are available occupations for the claimant.
 
 
 36
 Id. at 1317 (emphasis added).
 
 
 37
 In the instant case, the evidence in the administrative record supports the conclusion that Fujikawa does not have an impairment which would prevent him from performing some identifiable job. Fujikawa's own doctors, Podlone and Aung, as well as the independent medical examiner, McKinnon, concur that he is not continuously unable to perform any occupation for which he is or may become qualified by reason of his or her education, training or experience." (Emphasis added.) Fujikawa is in his fifties, has a bachelor's degree, 16-plus years' experience in the computer industry, and no discernible physical disability which would preclude his working, other than the limitation that he avoid extended exposure to fluorescent lights and VDTs. The medical and vocational evidence supports VPA's decision that Fujikawa is not entitled to LTD benefits under the Plan.
 
 
 38
 Finally, Fujikawa contends that it was an abuse of discretion for VPA to have disregarded the Social Security Administration ("SSA") Administrative Law Judge's ("ALJ") detemrination made in January granting Fujikawa social security disability benefits. The report from the ALJ noted that "[the medical evidence indicates that the claimant has the following conditions: abnormal MIS of the brain, with diagnoses of possible multiple sclerosis, chronic intermittent left frontal headaches associated with nausea and fatigue; small-vessel disease with ischemic stroke; a need to avoid VDT screens anf florescent lights, as these aggravate the claimant's headaches and nausea." The ALJ summarized vocational expert Robert Montgomery's ("Montgomery") testimony explaining that, because his past relevant work was skilled and sedentary computer work which must be done under fluorescent lights in front of a computer screen, Fujikawa's inability to use display terminals would require him to work with written instructions which erode all existing employment. Based on the aforementioned medical information, as well as a vocational assessment done by Montgomery, the ALJ concluded:
 
 
 39
 Having carefully examined all of the evidence of record, and the testimony at the hearing ... the claimant is unable to perform substantial gainful activity, even unskilled work at a sedentary level of exertion, due to his medical condition.
 
 
 40
 VPA expressed its concern with the ALJ's conclusion, based on the fact that the ALJ's finding that Fujikawa is unable to perform substantial gainful activity, occurred in January 1993 while Fujikawa was employed at HP. Fujikawa did not leave HP until April 1993. Further, is Snow, this court explained:
 
 
 41
 The mere fact that the plan administrator's decision is directly contrary to some evidence in the record does not show that the decision is clearly erroneous. See Taft, 9 F.3d at 1473-74. Rather, "review under the 'clearly erroneous' standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.' " (Citations omitted.) That standard certainly does not permit the overturning of a decision where there is substantial evidence to support the decision, that is, where there is "relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." (Citation omitted)
 
 
 42
 Snow, 87 F.3d at 331-32. Therefore, the fact that VPA considered the SSA ALJ's decision, but was persuaded by more current information to the contrary, does not demonstrate an abuse of discretion.
 
 
 43
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 **
 The Honorabl John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 In his September 13, 1990, report Dr. Isaac Silberman, a neurologist, diagnosed Fujikawa's problem as a "Convulsive disorder-complex partial seizures -precipitated at times by fluorescent rights and video terminals "